320 P.2d 697

Matter of the Application of Ted DENET-
CLAW, a Navajo Indian, for a Writ
of Habeas Corpus.

No. 6519.

Supreme Court of Arizona.

Jan. 28, 1958.

D. L. Greer, Apache County Atty., St. Johns, for appellant.

Laurence A. Davis and Lawrence C. Huerta, Window Rock, for appellee.

UDALL, Chief Justice.

This is an appeal by the State of Arizona from an order of the Superior Court of Apache County, in a habeas corpus matter, releasing petitioner Denetclaw from a commitment issued by a justice court and restoring him to his liberty.

The facts, which are not in dispute, may be summarized as follows: Petitioner, Ted Denetclaw, a Navajo tribal Indian, was arrested on April 26, 1957, by Kenneth Febach, an Arizona highway patrolman, on the right of way of state highway numbered "U. S. 66", which at that point (Section 5, Tp. 22 North, Range 31 East) lies wholly within the exterior boundaries of the present Navajo Indian Reservation, in Apache County, Arizona. It is conceded that originally this 19-mile strip of highway was not on the reservation but was brought within it by an Act of Congress dated June 14, 1934 (48 Stat. 960) which extended southward the boundaries of said reservation. The Act contains the following significant proviso protecting prior legal rights, viz.:

> "All valid rights and claims initiated under the public land laws prior to approval hereof involving any lands within the areas so defined, shall not be affected by this Act."

The Act further permitted exchanges of lands then owned by the State of Arizona and appropriated money for the purchase of privately owned lands; section 5, supra (an odd-numbered railroad grant section) obviously fell within this latter category. Unfortunately no effort was made in the instant case to establish that the State of Arizona probably had a valid easement for this highway before it became a part of the reservation that *might* carry with it the right to police same as to *all* travelers. Petitioner was taken by the patrolman before the Justice of the Peace of the Puerco precinct at Chambers (which is off the reservation) and was there formally charged with two misdemeanors involving traffic

violations, viz., driving under the influence of intoxicating liquor (A.R.S. § 28–692), and with reckless driving (A.R.S. § 28–693). He entered a plea of guilty to both counts and was sentenced to pay a fine of $125; the judgment further providing that in the event he failed to pay the fine he was to serve in the county jail one day for each $1 of the fine not paid. Petitioner, having failed to pay the fine, was committed that day to the custody of the sheriff and was incarcerated in jail at St. Johns under said commitment.

Application for a writ of habeas corpus was filed by petitioner on May 1, 1957. The writ issued and response was made thereto by the sheriff, whereupon a hearing was had, and on May 21, 1957, the learned trial court concluded as a matter of law that the justice court was without jurisdiction to try the petitioner because he was an Indian and the claimed offenses were committed upon an Indian reservation. Thereupon an order was entered releasing petitioner from said commitment and restoring him to liberty. This appeal followed.

At the outset it should be noted that we are here confronted with a very narrow issue, i. e., the jurisdiction of the justice court. Counsel for petitioner, in their answering brief, make this point clear. We quote:

"The authority of Arizona State Highway Patrolman Febach in the in-

stant case not only to investigate the accident, but also to arrest the appellee (petitioner) has not been questioned either here or below. All that has been questioned is the jurisdiction of the Justice Court of Apache County to try the appellee."

The basis for conceding the officer's right to arrest is presumably because of an assertion in the brief that the patrolman also held a federal commission.

█ The basic question posed by this appeal is:

"Do courts of the Estate of Arizona have jurisdiction over offenses in violation of the State traffic code, committed by an Indian upon state highways running through an Indian reservation?"

While a copy of the document was not submitted in evidence it is conceded that the Secretary of the Interior had, prior to the construction of the present U. S. Highway "66", made, executed, and delivered to the State of Arizona (acting by and through its Highway Department) *an easement* through that portion of the Navajo Indian Reservation where said highway is now located and that this easement was given pursuant to the provisions of Title 25 U.S. C.A. § 311.

The county attorney contends: the State is entitled to assume that such easement was given without any reservation for federal jurisdiction over the area embraced

within the right of way and that hence the state court had complete jurisdiction over both the petitioner and the offenses charged. A lone Wisconsin case, State v. Tucker, 1941, 237 Wis. 310, 296 N.W. 645, is primarily relied upon. It is true that this decision does support the State's position. Therein it is held that where the United States granted to the State of Wisconsin an easement to construct and maintain a public highway the grant of right of way carried with it such control *as was usual and necessary to the construction, maintenance and policing of the highway.* However, the right of the State to make such an assumption and the present vitality of the holding in the Tucker case will be considered later.

■ On the other hand, petitioner's counsel advance two propositions of law which, if correct, would appear to be determinative and controlling as to the validity of the trial court's order releasing him:

I

"The right of way of United States Highway '66' within the exterior boundaries of the Navajo Indian Reservation in Arizona is 'Indian country' within the meaning of the federal criminal code."

The criminal code of the United States (18 U.S.C.A. § 1151) now expressly defines "Indian county" as including:

"* * * all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, *including rights-of-way running through the reservation* * * *". (Emphasis supplied.)

Prior to the year 1948 "Indian country" was not defined in any federal statute, although the term was used in numerous sections of the United States code. With the complete revision of the U. S. Criminal Code in 1948 (62 Stat. 683), the Congress evidently decided to define "Indian country" for purposes of federal criminal jurisdiction. Section 1151, supra, was the result of this revision. Handbook of Federal Indian Law, by Cohen, contains an excellent treatise as to what constitutes "Indian country". See, Sec. 3 of Chap. 1, page 5 et seq. We hold, therefore, the State's contention that the granting of an easement for a right of way by implication conferred jurisdiction on Arizona courts over Indian traffic offenders is untenable as it completely ignores the express definition of what constitutes "Indian country" found in section 1151, supra.

■ Petitioner next asserts:

II

"All offenses committed by tribal Indians within Indian country in Arizona are within exclusive Federal or

Tribal jurisdiction, whether they be one of the ten major crimes, other felonies, misdemeanors, or traffic violations."

Offered in support thereof is a section of the Federal Criminal Code (18 U.S.C.A. § 1152), which reads as follows:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except * * *, shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

It will be noted this section contains certain express exceptions. The enumeration of these exceptions omits all others under the familiar rule "expressio unius est exclusio alterius", Central Housing Inv. Corp. v. Federal Nat. Mortg. Ass'n, 74 Ariz. 308, 248 P.2d 866, 867; Sutherland, Statutory Construction, 3rd Edition, section 4915.

By enactment of the Assimilative Crimes Act (18 U.S.C.A. § 13), the Congress expressly adopted the criminal laws of the States for areas within federal jurisdiction. For an excellent dissertation of this Act see United States v. Sosseur, 7 Cir., 181 F.2d 873. The courts have repeatedly held that federal jurisdiction over offenses, either felonies or misdemeanors, committed by an Indian in Indian country is exclusive and not concurrent with state jurisdiction. United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228; In re Blackbird, D.C., 109 F. 139; United States ex rel. Lynn v. Hamilton, D.C., 233 F. 685; State v. Jackson, 1944, 218 Minn. 429, 16 N.W.2d 752. Cf. Williams v. United States, 1946 Ariz., 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962.

Traffic offenses are not an exception to the rule of exclusive federal jurisdiction, In re Fredenberg, D.C., 65 F.Supp. 4; Cf. Application of Konaha, 7 Cir., 131 F.2d 737. The former decision arose in the Federal District Court in Wisconsin and it expressly repudiates the holding in State v. Tucker, supra, which the State here relies upon. Furthermore we point out that the Tucker case was decided before the 1948 revision of the Federal Criminal Code defining what is "Indian country".

The conclusion seems inescapable that the trial court was correct in discharging petitioner because the state courts, under the law as it now exists, do not have ju-

risdiction of an offense committed by a tribal Indian in "Indian country".

■ We are bound to follow the law as we find it irrespective of the apparent "void" this will leave in safeguarding the rights of the traveling public. At present the State Highway Patrol and Sheriff's deputies are, insofar as we know, the only agencies patrolling county and state highways that cross Indian lands. It is a matter of common knowledge that 26.77% of the land area of Arizona is "Indian country" and that there is hardly a trunk line highway in the state that does not cross one or more Indian reservations. It is further well known that the federal officers neither police nor attempt to prosecute traffic violations by Indians on our highways under the Assimilative Crimes Act, although unquestionably the federal courts would have jurisdiction over such offenses. The Tribal Court of Indian Offenses is not a federal court, Begay v. Miller, 70 Ariz. 380, 386, 222 P.2d 624; nor do such courts have jurisdiction to try offenses under the Assimilative Crimes Act. United States v. Sosseur, supra. We might ask what procedure is left to remove drunk and reckless Indian drivers from state highways lying on the reservation and punish them for traffic violations? The answer appears to be the tribal policeman and the tribal courts. (Here, the Navajo Tribal Court is at Ft. Defiance, approximately 40 miles north of Highway 66.) We are uninformed as to whether any Navajo tribal ordinances are in effect that cover such offenses. The magnitude of the policing job becomes apparent when it is realized that the traffic on "U. S. 66" through Apache County was 1,393,935 cars for the year 1957 or 3819 cars per day. As to out-of-state cars, this highway carries the heaviest traffic of any road in the state.

As evidence of the fact the problem presented is a real and not a fanciful one it appears that of the 105 accidents on this sector of "U. S. 66" in Apache County during 1957, Indians were involved in one-fourth of them (25 to be exact). Furthermore, of the ten fatalities eight of them occurred out of these accidents. We submit this is all out of proportion to the minute percentage of strictly Indian traffic. (*Note:* While the quoted statistics are outside of the record in this case, they are taken from authentic state sources.)

We are fortified in our views by noting that the Supreme Court of our sister state, New Mexico, in the case of State of New Mexico v. Begay, handed down January 22, 1958 but not yet reported, reached the same conclusion we have on an identical factual situation.

The Congress could readily solve this hiatus by an amendment of the Act de-

fining "Indian country" so as to exclude therefrom—insofar as state court jurisdiction is concerned—areas covered by rights of way.

Order affirmed.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concurring.