In the Matter of Mary WHITESHIELD
et al., Minor Children under the
Age of Eighteen Years.

James VERY, as Juvenile Commissioner of
Benson County, North Dakota, Peti-
tioner and Appellant,

v.

Felix WHITESHIELD and Lucy
Whiteshield, Respondents.

No. 8092.

Supreme Court of North Dakota.

Nov. 19, 1963.

Helgi Johanneson, Atty. Gen., Gene C. Grindeland, Sp. Asst. Atty. Gen., Bismarck, and Melvin Christianson, State's Atty., Minnewaukan, for petitioner and appellant.

Duffy & Haugland, Devils Lake, for respondents.

John B. Hart, Rolla, and Hans Walker, Jr., New Town, amici curiæ.

TEIGEN, Judge.

This is an appeal from an order of the district court, juvenile division, dismissing a proceeding for the termination of parental rights of Indian parents to their eight minor children. All of the persons involved in the proceedings are of Indian blood and are enrolled as such on the records of the Indian Bureau, United States Department of Interior. They reside upon Indian land, the title of which is held in trust by the United States of America and has not been extinguished. The allotment is located within the Devils Lake Sioux Indian Reservation within the County of Benson and State of North Dakota. The order dismissing was made on the ground that the court was without jurisdiction.

The proceedings were commenced by the service of a summons issued upon the petition of the Juvenile Commissioner for Benson County. Personal service thereof was admitted by the parents of the minor children. The parents, through their attorney, moved to dismiss the proceeding upon the ground that the petition upon its face showed that the court had no jurisdiction of the persons or subject matter of these proceedings. The petition sets forth, in addition to the identities, relationships and cause, the pertinent facts which classify the respondent parents and their children as described in the first paragraph of this opinion.

The sole issue for determination in this appeal is whether the juvenile court, referred to as the district court, juvenile division, has jurisdiction over Indian parents and their children residing upon the Fort Totten Indian Reservation to terminate the parental rights and transfer the care, control, and custody of the minor children in accordance with the statute, or to take such other action as may be appropriate in the circumstances.

Chapter 27–16, N.D.C.C., establishes and provides the jurisdiction and duties of the juvenile court. It provides the district court shall have original jurisdiction in cases coming under the provisions of the chapter but the court, for convenience, shall be called "the juvenile court." Upon the establishment of the grounds, reasons, and causes alluded to in Section 27–16–34, N.D.C.C., it has jurisdiction to transfer the care, control, and custody of children within its jurisdiction to the Director of the Division of Child Welfare of the Public Welfare Board, to a licensed child-placing agency, or to some suitable adult person named by the court and, in the exercise of such jurisdiction, the court may terminate all rights of the parents with reference to such children. The chapter invokes the equity jurisdiction of the district court. State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W.2d 514. Thus the court exercises its civil jurisdiction.

In recent cases decided prior to the 1958 amendment of Section 203 of the North Dakota Constitution, Chapter 430 of the Session Laws of 1959, and the effective date of Chapter 242 of the Session Laws of 1963, dealing with jurisdiction over civil causes arising on Indian country, it was held that North Dakota courts had no jurisdiction over a person alleged to have committed a crime under the State's laws against one who is an Indian allegedly committed on an Indian reservation. State v. Kuntz (N.D. 1954), 66 N.W.2d 531, and State v. Lohnes (N.D.1955), 69 N.W.2d 508. It was also held that the State courts have jurisdiction

over a civil matter arising between two Indians sounding in tort which was alleged to have occurred on an Indian reservation. Vermillion v. Spotted Elk (N.D.1957), 85 N.W.2d 432.

Public Law 280 of the 83rd Congress, Chapter 505 of United States Statutes at Large, Vol. 67, pages 588 to 590, was approved in 1953. Sections 6 and 7 of said Act provide as follows:

"Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: Provided, That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

"Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof."

In Vermillion v. Spotted Elk, supra, we held that the compact between the United States and the State of North Dakota, created by Section 4 of the Enabling Act and the disclaimer in Section 203 of the North Dakota Constitution, did not constitute a reservation by the United States of exclusive jurisdiction of civil causes of action, not involving lands, between Indians residing on reservations within the bound-

aries of the State and that Public Law 280, giving the consent of the United States to the acceptance of civil and criminal jurisdiction by any State not having such jurisdiction, has no application to States which have assumed and exercised jurisdiction prior to the enactment thereof without intervention by the United States. The court said that Section 22 of Article I, Constitution of North Dakota, providing that courts in this State shall be open to every man for any injury done him in his lands, goods, person or reputation, shall have remedy by due process of law and right and justice administered without sale, denial or delay, applied to Indians and, as citizens of the United States and residents of North Dakota, they have a constitutional right to the use of the courts. The case further held that the compact between the United States and the State of North Dakota, created by the Enabling Act and the disclaimer in Section 203 of our Constitution, has reference only to Indian lands and that the provisions of the compact cannot be held to be a reservation by the United States of jurisdiction in civil cases not involving land. However, by the amendment of Section 203 of the North Dakota Constitution in 1958, and the passage of Chapter 242 of the Session Laws of 1963, the people and the legislature of the State have taken affirmative action which amounts to a complete disclaimer of jurisdiction over civil causes of action which arise on an Indian reservation, except upon acceptance by the Indian citizens of the reservation in the manner provided by the legislative enactment.

Section 203 of the North Dakota Constitution was amended in 1958 to read as follows:

* * *

"Second. The people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian

tribes, and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and that said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States, *provided, however, that the Legislative Assembly of the state of North Dakota may, upon such terms and conditions as it shall adopt, provide for the acceptance of such jurisdiction as may be delegated to the state by act of Congress;* that the lands belonging to citizens of the United States residing without this state shall never be taxed at a higher rate than the lands belonging to residents of this state; that no taxes shall be imposed by this state on lands or property therein, belonging to, or which may hereafter be purchased by the United States or reserved for its use. But nothing in this article shall preclude this state from taxing as other lands are taxed, any lands owned or held by any Indian who has severed his tribal relations, and has obtained from the United States or from any person, a title thereto, by patent or other grant, save and except such lands as have been or may be granted to any Indian or Indians under any acts of Congress containing a provision exempting the lands thus granted from taxation, which last mentioned lands shall be exempt from taxation so long, and to such an extent, as is, or may be provided in the act of Congress granting the same.

\* \* \*"

The emphasis supplied constitutes the change that was made by the amendment.

Chapter 242 of the 1963 Session Laws (Chapter 27–19, 1963 Pocket Supplement to N.D.C.C.) became effective July 1, 1963. It provides for the acceptance of civil jurisdiction over civil causes of action arising in Indian country, limitations thereon, and withdrawal thereof. Specifically, it provides as follows:

"Section 1. In accordance with the provisions of Public Law 280 of the 83rd Congress and section 203 of the North Dakota constitution, jurisdiction of the state of North Dakota shall be extended over all civil causes of action which arise on an Indian reservation upon acceptance by Indian citizens in a manner provided by this section. Upon acceptance the jurisdiction of the state shall be to the same extent that the state has jurisdiction over other civil causes of action, and those civil laws of this state that are of general application to private property shall have the same force and effect within such Indian reservation or Indian country as they have elsewhere within this state."

Section 2 provides jurisdiction may be accepted by two methods: (1) By petition of a majority of the enrolled residents of a reservation over the age of twenty-one years; or (2) Affirmative vote of the majority of the enrolled residents twenty-one years of age or older at an election.

Section 3 provides that upon acceptance provided in Section 2 and certification thereof by the Executive Director of the Indian Affairs Commission to the Governor, the Governor shall issue a proclamation making the Act effective.

Section 4 provides the Act shall affect only those causes of action which arise after its effective date.

Section 5 allows an individual Indian to independently accept State jurisdiction and provides the method.

Section 6 allows a guardian appointed by an Indian court to consent to State civil jurisdiction for his ward.

Section 7 permits the courts, if jurisdiction is accepted, to hold Indian persons in civil or criminal contempt to maintain dignity and enforce their orders.

"Section 8. Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property belonging to any Indian or Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any federal treaty, agreement, or statute, or with any regulation made pursuant thereto; or shall confer jurisdiction upon the state to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein. *The civil jurisdiction herein accepted and assumed shall include but shall not be limited to the determination of parentage of children, termination of parental rights, commitments by county mental health boards or county judges, guardianship, marriage contracts, and obligations for the support of spouse, children, or other dependents.*" (Emphasis supplied.)

Section 9 provides that any tribal ordinance or custom shall be given full force and effect in the determination of civil causes if not inconsistent with State law.

Section 10 provides the Act shall not be construed as requiring the extension of any health, welfare, educational or other governmental service not otherwise required by the Constitution.

"Section 11. Civil jurisdiction as herein provided over an Indian reservation may be terminated by petition of three-fourths of the enrolled residents of a reservation who are twenty-one years of age or older. Such petition shall be filed with the North Dakota Indian affairs commission."

Section 12 provides for the method of effecting withdrawal of jurisdiction provided in Section 11 by proclamation.

Section 13 permits an individual who has accepted State civil jurisdiction to withdraw it.

■■ The effect of this legislation is to completely disclaim State jurisdiction over civil causes of action arising on an Indian reservation unless the Indians themselves have acted to accept jurisdiction in the manner provided by the statute. This disclaimer, by Section 8 thereof, specifically includes termination of parental rights. The enrolled residents located within the Devils Lake Sioux Indian Reservation within the County of Benson, North Dakota, have not acted pursuant to Section 2 of Chapter 242 of the Session Laws of 1963 to accept State jurisdiction in civil causes of action which arise upon the reservation and, consequently, the Executive Director of the Indian Affairs Commission and the Governor of the State have not carried out the provisions of Section 3 of said Act to place its provisions in effect. Therefore, the Juvenile Court of Benson County lost whatever jurisdiction it may have had when the proceedings were commenced by the issuance of the summons on May 2, 1962, when Chapter 242 of the 1963 Session Laws became law on July 1, 1963. This is true for the reason so aptly stated by Mr. Justice Holmes in Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152, that "When the root is cut the branches fall."

■ When this court finds that the jurisdiction of the trial court has been taken away by a subsequent legislative act, we will not consider the merits of the appeal where the cause was not affirmatively adjudicated but will order the cause to be dismissed. Gallardo v. Santini Fertilizer Co., 275 U.S. 62, 48 S.Ct. 24, 72 L.Ed. 157.

The order dismissing the proceeding is affirmed.

MORRIS, C. J., and STRUTZ, BURKE, and ERICKSTAD, JJ., concur.