**THREE AFFILIATED TRIBES OF the FORT BERTHOLD RESERVATION, Plaintiff and Appellant,**

v.

**WOLD ENGINEERING, P. C., a North Dakota Professional Corporation, Defendant, Third-Party Plaintiff, and Appellee,**

v.

**SCHMIT, SMITH & RUSH, Third-Party Defendant and Appellee.**

Civ. No. 10172.

Supreme Court of North Dakota.

July 1, 1982.

Beyer & Holm Law Offices, Dickinson, for plaintiff and appellant; argued by John O. Holm, Dickinson.

Bosard, McCutcheon & Rau by Hugh McCutcheon, Minot, for defendant, third-party plaintiff, and appellee; argued by Gary H. Lee, Bismarck.

Pringle & Herigstad, Minot, for third-party defendant and appellee.

ERICKSTAD, Chief Justice.

Three Affiliated Tribes of the Fort Berthold Indian Reservation (Affiliated) appealed from a judgment of the District Court of Ward County dismissing the complaint for lack of subject matter jurisdiction. The sole issue on appeal is whether or not the State court has subject matter jurisdiction over a civil action arising within the exterior boundaries of the Fort Berthold Indian Reservation in which Affiliated is the plaintiff and the defendants are non-Indians. The trial court held it had no jurisdiction. We affirm.

Affiliated contracted with Wold Engineering for the design and construction of a water system for the Four Bears Village. For purposes of our discussion, Affiliated is an Indian tribe. The Four Bears Village is located entirely within the exterior boundary of the Fort Berthold Indian Reservation. The enrolled residents of the Fort Berthold Indian Reservation have not consented to assumption of civil jurisdiction by the state of North Dakota, pursuant to the Indian Civil Rights Act of 1968 and Chapter 27–19 of the North Dakota Century Code.

After the construction and installation of the water system, Affiliated brought suit against Wold Engineering, claiming Wold negligently designed the water system.

■ Affiliated has thoroughly briefed and outlined a historical perspective of Indian law in the United States. Essentially, its argument is that the state of North Dakota had limited jurisdiction to hear civil actions involving Indians on the Indian Reservation prior to Congress's enactment of Public Law 280 in 1953 and the amendment of that Act by Congress in 1968 through the Indian Civil Rights Act. The purpose of Public Law 280 was to facilitate the transfer of jurisdictional responsibility to the states. *Washington v. Confederated Bands and Tribes*, 439 U.S. 463, 505, 99 S.Ct. 740, 764, 58 L.Ed.2d 740 (1979). It permitted states to amend their constitutions or existing statutes to remove any legal impediments to the assumption of civil and criminal jurisdiction, and thereby to unilaterally assume jurisdiction over criminal and civil matters within the exterior boundaries of Indian reservations within the states taking such action. In 1968, however, with the enactment of the Indian Civil Rights Act, Congress amended Public Law 280 to permit states to take jurisdiction only upon bilateral action. Congress now permits those states which did not previously acquire jurisdiction to assume jurisdiction only upon consent of the affected Indian tribes.

Affiliated argues that under the Congressional scheme states retained the jurisdiction held before the enactment of Public Law 280 and the Indian Civil Rights Act of 1968. In essence, Affiliated argues that North Dakota retained residuary jurisdiction over actions brought by Indians against non-Indians for civil wrongs committed on Indian lands. *See, State ex rel. Iron Bear v. District Court*, 162 Mont. 335, 512 P.2d 1292 (1973). That argument would be more convincing had the legislature of North Dakota not, pursuant to Public Law 280, totally disclaimed jurisdiction over civil causes of action arising on an Indian reservation. *In re Whiteshield*, 124 N.W.2d 694 (N.D.1963). In *Nelson v. Dubois*, 232 N.W.2d 54 (N.D.1975), with Justice Vogel dissenting, we rejected the concept of "residuary" jurisdiction. We adhere to that decision today.

In tracing the history of North Dakota's Indian civil jurisdiction we start with the Congressional Enabling Act, passed February 22, 1889, providing for the establishment of the states of Montana, North Dakota, South Dakota and Washington. Section 4, subdivision 2, of that Act provided that "Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States." That section was incorporated into the original North Dakota Constitution as a "Compact with the United States." Art. XVI, § 203 N.D.Const. (1889).

In *Vermillion v. Spotted Elk*, 85 N.W.2d 432 (N.D.1957), this Court said that the contract between the United States and North Dakota created by Section 4, subdivision 2, of the Enabling Act and the disclaimer in Section 203 of the North Dakota Constitution, did not constitute a reservation by the United States of exclusive jurisdiction over civil causes of action between Indians residing on the reservation, if the actions did not involve the lands. Further, this Court said Public Law 280 had no application to states such as North Dakota which had assumed and exercised jurisdiction prior to the enactment of Public Law 280.

Under the authority of Public Law 280 the people of North Dakota in 1958 approved an amendment of Section 203 of the North Dakota Constitution which reads:

"The people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes, and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and that said *Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States, provided, however, that the legislative assembly of the state of North Dakota may, upon such terms and conditions as it shall adopt, provide for the acceptance of such jurisdiction as may be delegated to the state by Act of Congress;* . . . ." Article XIII, § 1, N.D. Const. (Emphasis added).

In 1963 the North Dakota Legislature, under the authority of Public Law 280 and the Constitutional amendment to Section 203, enacted Chapter 27–19, N.D.C.C. That chapter permits state court's to take jurisdiction over "all civil causes of action which arise on an Indian reservation upon acceptance [of such jurisdiction] by Indian citizens. . . ." § 27–19–01, N.D.C.C.

Because of the constitutional amendment and the enactment of Chapter 27–19, N.D. C.C., we overruled *Vermillion v. Spotted Elk*, 85 N.W.2d 432 (N.D.1957), in *In re Whiteshield*, 124 N.W.2d 694 (N.D.1963). We said the jurisdiction found in *Spotted Elk* was disclaimed by the people and the legislature of the state:

"However, by the amendment of Section 203 of the North Dakota Constitution in 1958, and the passage of Chapter 242 of the Session Laws of 1963, the people and the legislature of the State have taken affirmative action which amounts to a complete disclaimer of jurisdiction over civil causes of action which arise on an Indian reservation, except upon acceptance by the Indian citizens of the reserva-

tion in the manner provided by the legislative enactment." *In re Whiteshield*, 124 N.W.2d at 696.

Since *In re Whiteshield*, we have consistently held that we have no jurisdiction over civil causes of action arising within the exterior boundaries of an Indian reservation, unless the Indian citizens of the reservation vote to accept jurisdiction. *United States ex rel. Hall v. Hansen*, 303 N.W.2d 349 (N.D.1981); *Nelson v. Dubois*, 232 N.W.2d 54 (N.D.1975); *Gourneau v. Smith*, 207 N.W.2d 256 (N.D.1973).[1] We therefore hold that the district court lacked jurisdiction to hear this action.

█ Affiliated argues that denying Indians access to State court to sue non-Indians for civil causes of action arising on the reservation denies them equal access to the courts and their equal protection rights under Art. 1, Section 21 of the North Dakota Constitution and the Fourteenth Amendment to the United States Constitution, because non-Indian plaintiffs allegedly are permitted access to State courts to sue non-Indian defendants over controversies arising within the exterior boundaries of Indian reservations.

In *Gourneau v. Smith*, 207 N.W.2d 256, 259 (N.D.1973), we affirmed the trial court's judgment dismissing the plaintiff's complaint for lack of subject matter jurisdiction because the parties to the action were Indians. On appeal, the Indian plaintiff argued that she was denied equal protection of the laws because of the state's failure to hear her action. In response speaking through Justice Strutz we said:

"The plaintiff has the same privileges as any other citizen in maintaining suits in the courts of this State. If the plaintiff were not an Indian and she attempted to bring an action against a defendant who was an enrolled Indian for personal injuries which she alleged had been suffered in an accident occurring on the Indian reservation, the State courts nevertheless

---

1. Affiliated argues that the dicta in *Rolette County v. Eltobgi*, 221 N.W.2d 645, 648 (N.D. 1974), stating that "Indians have the right to sue non-Indians in State courts" is controlling

in this action. However, such right does not exist where the subject matter of the action arose within the exterior boundaries of a reservation.

would be without jurisdiction. *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Thus the plaintiff is not denied her right to bring such action in the State courts because she is an Indian; she is denied that right because the alleged tort was committed by an Indian on an Indian reservation, and because the Indians on that reservation have not accepted State jurisdiction in the manner provided for such acceptance. Neither is denial of access to State courts for certain claims an infringement of the plaintiff's constitutional rights under Section 22 of the North Dakota Constitution. The courts of this State are not at liberty to exercise jurisdiction over civil actions against an Indian where the cause of action arises on the reservation. *Williams v. Lee, supra.*" 207 N.W.2d at 259.

The United States Supreme Court addressed the equal protection argument in *Washington v. Confederated Bands and Tribes*, 439 U.S. 463, 500–01, 99 S.Ct. 740, 761, 58 L.Ed.2d 740 (1979). In *Confederated Bands,* the Court upheld Chapter 36 of the 1963 Washington laws against constitutional attack. Through that law, "the Washington Legislature obligated the state to assume civil and criminal jurisdiction over Indians and Indian territory within the state, subject only to the condition that in all but eight subject-matter areas jurisdiction would not extend to Indians on trust or restricted lands without the request of the Indian tribe affected. Ch. 36, 1963 Wash. Laws." (Footnote omitted). *Id.,* 439 U.S. at 465–467, 99 S.Ct. at 743–44. The Court first held that the scheme adopted by the Washington Legislature was within the scope of the authorization of Public Law 280. It then addressed the equal protection argument as follows:

> "It is settled that 'the unique legal status of Indian tribes under federal law' permits the Federal Government to enact legislation singling out tribal Indians, legislation that might otherwise be constitutionally offensive. *Morton v. Mancari,* 417 U.S. 535, 551–552, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290. States do not enjoy this same unique relationship with Indians, but Chapter 36 is not simply another state law. It was enacted in response to a federal measure explicitly designed to readjust the allocation of jurisdiction over Indians. The jurisdiction permitted under Chapter 36 is, as we have found, within the scope of the authorization of Pub.L. 280. And many of the classifications made by Chapter 36 are also made by Pub.L. 280. Indeed, classifications based on tribal status and land tenure inhere in many of the decisions of this Court involving jurisdictional controversies between tribal Indians and the States, see, *e.g., United States v. McBratney,* 104 U.S. 621, 26 L.Ed. 869. For these reasons, we find the argument that such classifications are 'suspect' an untenable one. The contention that Chapter 36 abridges a 'fundamental right' is also untenable. It is well established that Congress, in the exercise of its plenary power over Indian affairs, may restrict the retained sovereign powers of the Indian tribes. See, *e.g., United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303. In enacting Chapter 36, Washington was legislating under explicit authority granted by Congress in the exercise of that federal power." *Washington v. Confederated Bands and Tribes,* 439 U.S. 463, 500–01, 99 S.Ct. 740, 761, 58 L.Ed.2d 740 (1979).

Likewise, the people of North Dakota and the legislature were acting under explicit authority granted by Congress in the exercise of its federal power over Indians when our Constitution was amended and Chapter 27–19, N.D.C.C., was enacted. We therefore find no equal protection violation of the Constitutions of either the state or the United States and for the reasons stated in this opinion, affirm the judgment of the district court.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.