Peter L. DAVIS, Petitioner
and Appellee,

v.

DIRECTOR, NORTH DAKOTA DEPART-
MENT OF TRANSPORTATION, Re-
spondent and Appellant.

Civ. No. 900245.

Supreme Court of North Dakota.

March 5, 1991.

Robert E. Lane (argued), Asst. Atty. Gen., Bismarck, for respondent and appellant.

Arne F. Boyum, Jr. (no appearance), Rolla, for petitioner and appellee.

LEVINE, Justice.

The Director, North Dakota Department of Transportation, appeals from a district court judgment reversing an administrative revocation of Peter Davis' driver's license and ordering the reinstatement of the license. We affirm the district court judgment.

Davis, an enrolled member of the Turtle Mountain Band of Chippewa Indians, was stopped by North Dakota Highway Patrol Officer Mitchell Rumple along U.S. Highway 281 near the southern border of the Turtle Mountain Indian Reservation. Officer Rumple saw Davis driving irregularly in the east-bound lane and stopped him near mile marker 246. Davis believed he was on Reservation land and refused to get out of his truck. He asked Officer Rumple to call a Bureau of Indian Affairs police officer. While Rumple was standing next to Davis' pickup truck, he smelled alcohol and saw that Davis had watery eyes. Officer Rumple repeated his request that Davis get out of the pickup but Davis refused and attempted to drive off. Rumple reached through the pickup window and shut off the engine. During this exchange, Rumple arrested Davis for driving under the influence.

Rumple was uncertain of the Reservation boundaries and believed the arrest site to be within the Reservation, so he followed what he understood to be the customary

procedure of the State Patrol and the Bureau of Indian Affairs police force. He arrested Davis and called for a BIA police officer. While waiting for the BIA officer to arrive, Rumple was joined by off-duty BIA officer Terry Marion and two Turtle Mountain Housing Authority security officers. Davis left his pickup and got into the security officers' car.

When BIA officers Kettleson and Trottier arrived, Davis moved to their car and they drove Davis to the Belcourt BIA police station. Rumple described the usual practice in cases where jurisdiction is in doubt is for the state law enforcement officer to charge an Indian with a tribal offense and place him in custody on the Reservation. If the jurisdictional doubt is later resolved in the state's favor, the Indian suspect is extradited and charged in state court. When he arrived with Davis at the Belcourt BIA police station, Rumple began the paperwork to charge Davis with the tribal prohibition of drunk driving.

Rumple told Davis while they were at the arrest site that Davis would be asked to take an Intoxilyzer test. Rumple asked Davis to take the test after they arrived at the Belcourt police station. The Intoxilyzer in Belcourt was broken. The only available one was in Rolla. Davis refused the Intoxylizer test but asked to be given a blood test. Rumple believed the Reservation hospital would not do a blood test for the state and insisted on an Intoxilyzer test. A BIA officer said the hospital would do the test for his agency and, with Davis' cooperation, left the police station with Davis for the hospital. During the drive to the hospital, Davis agreed to take an Intoxilyzer test administered by the BIA. BIA officer Kettleson took Davis from the Reservation to Rolla, the nearest location offering an operating Intoxilyzer machine, where he conducted a test on Davis.

While Kettleson and Davis were gone, Officer Rumple received a call from Officer Marion, suggesting that he consult a map showing the boundaries of the Reservation because Marion thought that the eastbound lane of highway 281 near mile marker 246, the arrest site, was outside the Reservation. Rumple checked a map at the BIA station and reviewed the map with Kettleson, upon Kettleson's return from Rolla. Rumple and Kettleson agreed the arrest site was on state land.

Rumple checked the Intoxilyzer test taken by Davis in Rolla and concluded it was invalid because it violated the guidelines of the state toxicologist. Rumple told Davis that the arrest was on state land, that the first Intoxilyzer test was invalid and why, and he asked Davis to take a second Intoxilyzer test at Rolla, North Dakota. Rumple advised Davis that refusing to take the test could lead to the revocation of his driver's license. Davis refused, insisting that Rumple needed to extradite him before he could be taken to Rolla, and he asked to be given a blood test at the Reservation hospital. Rumple treated this as a second request for an independent test and, believing a suspect is entitled to an independent test only after submitting to the state's test, he left Davis in his jail cell.

The Director acted to revoke Davis' driver's license, and on Davis' request, an administrative hearing was held. The hearing officer found that Davis was stopped after Officer Rumple saw his pickup weaving on the highway; and that Officer Rumple noted a strong odor of alcohol, bloodshot watery eyes and an uncooperative attitude which led to Davis' arrest for drunk driving. She also found that Davis was told of the necessity for a second test, advised of the consequences of refusing, and that he refused to take the test. On these findings, the hearing officer concluded that Davis had violated the implied consent statute and ordered Davis' license revoked for one year.

Davis appealed the license revocation to the district court and the district court ordered Davis' license reinstated, finding that Davis' due process rights to an extradition proceeding were violated, and that the request for a second Intoxilyzer test was unreasonable. The Director appealed. Davis has not filed an appellate brief and the Tribe has made no appearance.

The Director raises three issues on this appeal, carefully avoiding the obvious juris-

dictional thicket. Instead, he argues that Officer Rumple had reasonable grounds to believe Davis was driving while drunk, that he arrested Davis for that crime, and that Davis refused to take the test for blood-alcohol requested by Rumple. Because we conclude as a matter of law that there was no refusal here, we affirm.

■ Obviously, whenever we consider a case involving a member of an Indian tribe we are confronted with the issue of subject-matter jurisdiction. We have declined to exercise State jurisdiction over civil actions involving Indians arising on state highways within an Indian Reservation. *Gourneau v. Smith*, 207 N.W.2d 256 (N.D. 1973) [*overruling Vermillion v. Spotted Elk*, 85 N.W.2d 432 (N.D.1957)]. State highways within the boundaries of an Indian Reservation are part of that Reservation, *Id.*, and therefore not subject to state jurisdiction. *Accord Glover v. United States*, 219 F.Supp. 19 (D.Mont.1963); *In re Fredenberg*, 65 F.Supp. 4 (E.D.Wis. 1946); *Benally v. Marcum*, 553 P.2d 1270 (N.M.1976); *In re Denetclaw*, 83 Ariz. 299, 320 P.2d 697 (1958); *contra State v. Dugan*, 52 N.C.App. 136, 277 S.E.2d 842 (1981). However, we were recently reminded by the United States Supreme Court that, notwithstanding our skittishness over exercising state jurisdiction, we must provide Indian plaintiffs access to our courts to seek relief against non-Indians when no other court is available to them. *Three Affiliated Tribes v. Wold Engineering*, 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984), *rev'g and rem'g Three Affiliated Tribes v. Wold Engineering*, 321 N.W.2d 510 (N.D.1982). The exercise of state jurisdiction in those circumstances is compatible with tribal autonomy and does not interfere with the right of tribal Indians to govern themselves under their own laws. 467 U.S. at 147–49, 104 S.Ct. at 2273–75. Indeed, declining to exercise subject-matter jurisdiction over a civil suit brought by the tribe against a non-Indian on the ground that chapter 27–19, NDCC, barred such a suit absent the tribe's waiver of sovereign immunity, imposes an undue burden on federal and tribal interests in Indian self-government and autonomy and

the state law is therefore preempted by federal law. *Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986), *rev'g Three Affiliated Tribes v. Wold Engineering*, 364 N.W.2d 98 (N.D.1985).

■ The question presented is whether a state police officer who arrests an enrolled member of the Turtle Mountain Band of Chippewa Indians off the Reservation for a crime committed off the Reservation but transports him on to the Reservation has the authority while on the Reservation to request the Indian arrestee to take a chemical test off the Reservation. Our answer is No, and we thus affirm the district court's reversal of the administrative decision revoking the defendant's driver's license for refusal to take such a test.

The record establishes that the tribe has laws and procedures governing driving under the influence on Indian land. It is also clear that the North Dakota Highway Patrol has a policy which calls for State Patrol officers to enlist the assistance of BIA police officers when an arrest of an Indian is made within the boundaries of a Reservation. Because of the absence of briefs from either the Indian appellee or the tribe and because of the total lack of briefing by the Director of the issue of subject-matter jurisdiction, we prefer to resolve this case in limited fashion on a narrow ground.

Section 39–20–01, NDCC, directs a law enforcement officer to inform a person arrested for DUI of the requirement that the arrestee submit to a chemical test or tests and the consequences of a refusal to undergo such testing. *See Neset v. North Dakota Highway Comm'r*, 388 N.W.2d 860 (N.D.1986). The test must be administered at the direction of a law enforcement officer. *Id.* at 863. The statute assumes that the law enforcement officer is acting within his or her jurisdiction. Section 39–03–02, NDCC, empowers the Highway Patrol to "enforce the provisions of the laws of this state relating to the protection and use of the highways...." So, too, under section 39–03–09(12), NDCC, the Highway Patrol is authorized to arrest for any violation of

law committed in the officer's presence upon any highway. However, as this Court pointed out:

> "There can be no doubt that State highways within the boundaries of a reservation are a part of the reservation. 'Indian country' is defined by Federal law as being all land within the limits of an Indian reservation under jurisdiction of the United States Government, 'including rights-of-way running through the reservation, ...' 18 U.S.C.A. Sec. 1151."

*Gourneau v. Smith,* 207 N.W.2d at 258.

The record discloses no evidence of cross-deputization or other cooperative agreements. *See Piotrowski v. Comm'r of Public Safety,* 453 N.W.2d 689 (Minn.1990). The Director has not briefed the issue of the North Dakota Highway Patrol's authority to enter an Indian Reservation and exercise police authority and we are wholly unpersuaded that Officer Rumple was so empowered. State highways running through an Indian Reservation remain part of the Reservation and within the territorial jurisdiction of the tribal police. *Ortez–Barraza v. United States,* 512 F.2d 1176 (9th Cir.1975). Even if Officer Rumple had the authority of an ordinary citizen to arrest on the Reservation, assuming that the tribal ordinances provided for citizens' arrest, he would not be authorized under section 39–20–01, NDCC, to request or direct a chemical test. We have been apprised of no tribal law or case which authorizes an ordinary citizen to request a DUI arrestee to undergo testing. *But see Bounds v. Commissioner of Pub. Safety,* 361 N.W.2d 145 (Minn.App.1985). Because Rumple had no authority to request Davis to take the test, Davis' failure to take the test is not a refusal upon which to revoke his license under chapter 39–20, NDCC. *Cf. Kuntz v. State Highway Comm'r,* 405 N.W.2d 285 (N.D.1987) (denial of a reasonable opportunity to consult with an attorney before deciding to take a chemical test makes the failure to take a test not a refusal).

Accordingly, we affirm.

VANDE WALLE, Justice.

Notwithstanding the jurisdictional thicket which this case appears to engender, the facts and the legal issues appear to me to be rather clear: Davis, while on State land, was arrested for DUI and the arresting officer requested him to submit to an Intoxylizer test, which request Davis refused. Both Davis and the arresting officer mistakenly believed they were within the boundaries of the Reservation. Davis was taken onto the Reservation and, at the request of BIA officers, he submitted to a test which was taken outside of the Reservation. The test was inadequate for State purposes. A request by the arresting officer to Davis to retake the test was made on the Reservation and refused by Davis. The issue thus becomes whether or not Davis's subsequent consent to a test, which test produced results that were invalid for State purposes, is sufficient to negate the effect of his prior refusal when followed by the State officer's request to retake the test while they were on the Reservation and Davis's refusal to retake the test. I believe that it is.

An arresting officer is not the only law enforcement official who can request that the arrested person submit to a test for intoxication. *Neset v. North Dakota State Highway Comm'r,* 388 N.W.2d 860 (N.D. 1986). I therefore conclude that the consent to take the test, although the request was made by the BIA officers rather than the State officer because of a mistake of fact as to the place of arrest, negates the effect of the original refusal to submit to the test. *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974) [subsequent consent to take test cures prior refusal when accuracy of test is not impaired]. Furthermore, I conclude that where that test produced results inadequate for State purposes, through no fault of Davis, a request to retake the test, made on the Reservation, by the State officer is a request made without jurisdiction to do so and therefore the refusal to retake the test was a nullity and cannot be considered a refusal to take a test within the meaning of section 39–20–04, NDCC.

GIERKE and MESCHKE, JJ., concur.

ERICKSTAD, Chief Justice, dissenting.

I respectfully dissent. I disagree with Justice Levine's apparent conclusion that Officer Rumple either did not ask, or did not have the authority to ask, Davis to submit to an Intoxilyzer test at any time after he informed Davis that he was or would be charged with the offense of driving a vehicle while under the influence of intoxicating liquor.

During his testimony at the administrative hearing, Officer Rumple, when asked by the administrative hearing officer when Davis first refused, responded, "His first refusal was out on the highway when he was in ... or about to get into one of the police cars out there." When Officer Rumple was asked by the administrative hearing officer if he had asked Davis more than once on the highway to submit to an Intoxilyzer test, Officer Rumple responded, "I believe it was about at least twice if not three times." When asked whether or not he asked Davis to submit to an Intoxilyzer test in Belcourt, Officer Rumple responded, "I asked him *again* when we arrived in Belcourt. [Emphasis added.]"

During the administrative hearing Davis did not, at any time, dispute the fact that he was asked and he declined to take an Intoxilyzer test while still on the highway. The only testimony which might suggest that he was not asked on the highway, if not read in conjunction with the rest of Officer Rumple's testimony, was the following statement by Officer Rumple: "Prior to going to Belcourt, we explained to him on three different occasions that he *would* be asked to take an Intoxilyzer test. [Emphasis added.]" In light of all the evidence, I must conclude that Davis was asked to submit to an Intoxilyzer test while on the highway and that Davis refused to submit to such a test.[1] I believe the administrative officer would also so conclude if requested to consider this issue.

While keeping in mind the conclusion I have reached concerning Davis' refusal on the highway, I essentially agree with much of Justice Levine's statement of the facts. Therefore, I offer only a brief summary of

my view of the essential facts. Davis was initially stopped on Highway 281, in the eastbound lane, in Rolette County, after Officer Rumple observed erratic driving behavior. At the initial stop there apparently was some confusion as to whether or not the stop had occurred on the Turtle Mountain Indian Reservation. While on the highway, Davis was eventually placed under arrest and informed that the arrest was for driving under the influence of alcohol. Davis was then asked, on at least two separate occasions at the scene of the arrest, to submit to an Intoxilyzer test. He refused to submit to the test. Subsequent to these events, Davis was transported by Bureau of Indian Affairs' [BIA] officers to Belcourt, North Dakota, located on the Turtle Mountain Indian Reservation. The Intoxilyzer which was available on the reservation was not functional. Davis demanded a blood test be performed instead of an Intoxilyzer test. In compliance with his request, the BIA officers started to take Davis to the Belcourt Hospital to have a blood test performed. However, while in route to the Belcourt Hospital, Davis agreed to submit to an Intoxilyzer test. Davis was then taken off the reservation by the BIA officers to Rolla, North Dakota, to have an Intoxilyzer test performed. During the time Davis was being transported to Rolla, Officer Rumple, after conferring with the BIA officers and viewing a map, concluded that the initial arrest had occurred on state land. Upon Davis' return to Belcourt, Officer Rumple examined the Intoxilyzer test and determined that it would be invalid for use in state proceedings. He then asked Davis to submit to an Intoxilyzer test. Davis again refused.

Davis was granted a hearing to determine whether or not he had refused to submit to a test as required by the implied consent laws. A hearing of this nature is limited to three issues: 1) whether or not the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of section 39–08–01, or equivalent ordinance; 2) whether or not the

1. This appears to be consistent with Justice VandeWalle's interpretation of the evidence.

individual was placed under arrest; and 3) whether or not the individual refused to submit to the requested test or tests. *See* § 39–20–05(3), N.D.C.C.[2] *See generally Buck v. North Dakota State Highway Com'r*, 425 N.W.2d 370 (N.D.1988).

The administrative hearing officer determined that Davis' driving privileges should be revoked because he refused to submit to a test as is required by our implied consent laws. *See* § 39–20–01, N.D.C.C.[3] Upon a review of the transcript of the administrative hearing and the hearing officer's findings of fact, it is evident that this decision could have been reached in reference to Davis' initial refusal, which occurred on the highway outside the exterior boundaries of the Indian reservation.

The administrative hearing record seems to disclose that Davis was stopped after Officer Rumple observed him driving erratically; that Davis was then placed under arrest for driving while under the influence of alcohol and asked to perform an Intoxilyzer test; and that Davis refused to perform the test. All of these events occurred before Davis was transported to Belcourt. In light of this evidence, I believe that the administrative hearing officer may have had sufficient evidence to determine the three above issues adversely to Davis. § 39–20–05(3), N.D.C.C.

However, a conclusion that Davis violated the implied consent laws while still on the highway does not end the inquiry. A question arises from Davis' subsequent submission to take a test. We have previously stated that a subsequent agreement to take a test may negate the effect of an initial refusal. *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974). Although I still adhere to my dissent in *Lund*, I also believe that the decision in *Lund* should not be extended to apply in this case where the state officer surrendered custody to the BIA officers after Davis' strong contention that the state officer had no authority over him as he was an Indian who was stopped while driving on a highway within an Indian reservation.

In *Lund* we said:

> after placing the person, except persons mentioned in section 39–20–03, under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof.... The law enforcement officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation for up to three years of the person's driving privileges."

As the issue of the difference between the two sections was not raised below, I leave to another day the legal consequences of the differences. *See Lynch v. Williston City Com'n*, 460 N.W.2d 136, 138 (N.D.1990). Hopefully the legislature will act to clarify this matter.

2. The pertinent part of section 39–20–05(3), N.D.C.C., reads:

"The scope of a hearing for refusing to submit to a test under section 39–20–01 may cover only the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of section 39–08–01 or equivalent ordinance; whether the person was placed under arrest; and whether that person refused to submit to the test or tests. The scope of a hearing for refusing to submit to a test under section 39–20–14 may cover only the issues of whether the law enforcement officer had reason to believe the person committed a moving traffic violation or was involved in a traffic accident as a driver, whether in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol and, whether the person refused to submit to the onsite screening test. Whether the person was informed that the privilege to drive would be revoked or denied for refusal to submit to the test or tests is not an issue."

It is interesting to note the differences between the above language of section 39–20–05(3), N.D.C.C., and the pertinent language from section 39–20–01, N.D.C.C., which reads:

"The test or tests must be administered at the direction of a law enforcement officer only

3. The pertinent part of section 39–20–01 reads:

*"Implied consent to determine alcoholic and drug content of blood.* Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic, other drug, or combination thereof, content of the blood."

"[W]e hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; *when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.*"

*Lund*, 224 N.W.2d at 557 (emphasis added).

In addition to the distinguishing feature that the state officer lost jurisdiction over the person in this case, I believe the holding in *Lund* requires that the subsequent consent to take the test must be given while testing would still result in an accurate test when the proper testing equipment and facilities are still available, when the subsequent consent will not result in an increase of expense or result in substantial inconvenience to the authorities, and when the individual has remained in continual custody and observation of the proper authorities since the time of arrest. Davis' subsequent consent did not occur under such circumstances. It seems only reasonable to me that the state and its personnel should not be held accountable for the actions of the BIA officers who were acting in conformity with Davis' view that he was not subject to state jurisdiction.

Justice Levine has presented the following question:

"The question presented is whether a state police officer who arrests an enrolled member of the Turtle Mountain Band of Chippewa Indians off the Reservation for a crime committed off the Reservation but transports him on to the Reservation has the authority while on the Reservation to request the Indian arrestee to take a chemical test off the Reservation."

Justice Levine, after a review of Indian jurisdiction law, concluded that Officer Rumple did not have any authority while on the Indian reservation to ask Davis to submit to a chemical test *off* the reservation. I agree with Justice Levine's answer to that question, but in my view of the evidence both the question and answer are immaterial.

Notwithstanding the above, it is interesting to note that we have previously refused to apply the decision in *Lund* in a case involving first a consent and then a refusal. *Clairmont v. Hjelle*, 234 N.W.2d 13 (N.D. 1975). While the circumstances of the case at hand and *Clairmont* are different, what we said in *Clairmont* seems pertinent:

"In the one case the test can be made, though slightly delayed; in the other, it cannot be made at all."

*Id.* 234 N.W.2d at 16. Here, it is questionable whether a proper test could, at such a belated time, be made at all.

Once again, I feel compelled to remind the Court of the reasons for the enactment of the implied consent laws:

"In an attempt to reduce the holocaust on our highways, part of which is due to the driver who has imbibed too freely of intoxicating liquor, the so-called 'Implied Consent Act' was enacted by our legislature in 1959."

*Colling v. Hjelle*, 125 N.W.2d 453, 459–60 (N.D.1963). We may take judicial notice of the carnage caused by the drunk driver. *Kobilansky v. Liffrig*, 358 N.W.2d 781 (N.D.1984).

I would reverse and remand this case to the Department of Transportation for determination of whether or not Davis violated the implied consent laws while on the highway outside of the Indian reservation and before he was placed in the custody of the BIA.