Gilbert A. NESET, Appellant,

v.

**NORTH DAKOTA STATE HIGHWAY COMMISSIONER, Appellee.**

Civ. No. 11060.

Supreme Court of North Dakota.

June 6, 1986.

---

**4.** The lower court also offered its trial notes for review by counsel.

Brian W. Nelson, Fargo, for appellant.

Myron E. Bothun, Asst. Atty. Gen., State Highway Dept., Bismarck, for appellee.

GIERKE, Justice.

Gilbert A. Neset appeals from a district court judgment affirming an administrative hearing officer's decision revoking Neset's driving privileges. We affirm.

In the early morning hours of May 7, 1985, Deputy McTavish of the Cass County Sheriff's Office observed Neset's vehicle "going in a drifting motion from the line on the shoulder edge of the road to the line on the center edge of the road." Neset made a right turn onto an exit leading to Interstate 94 without using his turn signal. Deputy McTavish stopped Neset after fol-

lowing him for approximately two to three miles.

Upon approaching the vehicle, Deputy McTavish detected the odor of alcohol coming from the inside of the car. After failing various field sobriety tests, Neset was placed under arrest for driving while under the influence and was transported to the Cass County Jail.

Because Deputy McTavish was not qualified to administer the Intoxilyzer test, he requested that Officer Bjornson administer the test to Neset. Officer Bjornson several times requested that Neset submit to the Intoxilyzer test. Officer Bjornson also read to Neset the implied consent advisory set out in Section 39–20–01, N.D.C.C. Neset refused to take the test. Deputy McTavish completed a Request and Notice Form and submitted it to the Driver's License Division.

Neset requested and received an administrative hearing. The administrative hearing officer ordered revocation of Neset's driving privileges for one year, pursuant to Section 39–20–04, N.D.C.C. Neset appealed to the district court, which affirmed the administrative decision. Neset now appeals to this Court.

Two issues are raised on appeal:

1) Was the initial stop of Neset's vehicle valid?

2) Is the arresting officer the only person who can request the test and give the implied consent advisory?

▮ Initially, we note that the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., are applicable to an order of revocation issued under Section 39–20–04, N.D.C.C. *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739, 743 (N.D.1980). We therefore look to the record compiled by the administrative agency rather than to the findings of the district court. Our review is limited to determining whether the findings of fact are supported by a preponderance of the evidence; whether the conclusions of law are sustained by the findings of fact; and whether the agency decision is supported by the conclusions of law. *Hammeren v. North Dakota State Highway Commissioner*, 315 N.W.2d 679, 683 (N.D.1982).

▮ Neset contends that the officer's initial stop of the vehicle was without adequate justification. To justify an investigatory stop of a vehicle, the officer must have an articulable and reasonable suspicion that a motorist is violating the law. *State v. Placek*, 386 N.W.2d 36, 37 (N.D.1986); *State v. Indvik*, 382 N.W.2d 623, 627 (N.D. 1986); *see also Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979). Deputy McTavish testified that Neset's vehicle weaved from side to side in its own lane of travel and that Neset failed to signal for a right-hand turn.[1] We have previously held, in *State v. Dorendorf*, 359 N.W.2d 115 (N.D.1984), that an officer's observation of a vehicle weaving within its own lane of travel justified a stop of the vehicle to determine the cause of the weaving.[2] In the instant case,

---

1. Failure to signal when turning off of the roadway is a violation of Section 39–10–38(1), N.D. C.C.:

    "1. No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety without giving an appropriate signal in the manner hereinafter provided."

    Violation of this provision is an infraction. Section 39–07–06, N.D.C.C.

2. In *State v. Dorendorf, supra,* we stated that to have "probable cause" to stop a vehicle for investigatory purposes an officer must have "an articulable basis or reasonable suspicion for stopping" the vehicle. *State v. Dorendorf, supra,* 359 N.W.2d at 116 (citing *Delaware v. Prouse,*

440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). In subsequent cases we have applied the "articulable and reasonable suspicion" standard without using the term "probable cause." *E.g., State v. Placek, supra; State v. Indvik, supra.* In *State v. Indvik, supra,* we noted that a vehicle stop for investigatory purposes is analogous to a *"Terry* stop" [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and must be analyzed under the same standards. *State v. Indvik, supra,* 382 N.W.2d at 627. The United States Supreme Court similarly analogized "Terry stops" and investigatory vehicle stops in *Berkemer v. McCarty,* 468 U.S. 420, ——, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).

In *State v. VandeHoven,* 388 N.W.2d 857 (1986), also decided today, we have attempted to

Deputy McTavish also observed that a right turn was executed without using a directional signal. We conclude that, under these circumstances, the initial stop of Neset's vehicle was justified.

Neset also contends that the procedures outlined in Chapter 39–20, N.D.C.C., were violated when Officer Bjornson, rather than Deputy McTavish, requested that Neset submit to the Intoxilyzer test and read the implied consent advisory to Neset. Neset claims that only the arresting officer can make the request and give the implied consent advisory.

The relevant procedures are set forth in Section 39–20–01, N.D.C.C.:

"*39–20–01. Implied consent to determine alcoholic and drug content of blood.* Any person who operates a motor vehicle on a highway ... in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic, other drug, or combination thereof, content of the blood.... The test or tests must be administered at the direction of a law enforcement officer only after placing the person, except persons mentioned in section 39–20–03, under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof. The arresting officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation for

up to three years of the person's driving privileges...."

■ There is no provision in the statute that the arresting officer is the only law enforcement official who can request that the arrested person submit to the test. The statute requires only that the test "be administered at the direction of a law enforcement officer only after placing the person ... under arrest." In the instant case, the test was clearly administered "at the direction of" Deputy McTavish.

■ Neset also contends that the implied consent advisory may be given only by the arresting officer. We do not construe the statute so literally. The Legislature has impliedly recognized that not all law enforcement officers in this state will be certified to administer the chemical tests authorized under Chapter 39–20, N.D.C.C. *See* Section 39–20–07(5), N.D.C.C. If another officer administers the test, it may be more appropriate for that officer to give the implied consent advisory if the refusal is communicated to him.

■ Neset has failed to establish that the warning given was inadequate or inaccurate, or that he was in any way prejudiced by Officer Bjornson's giving of the implied consent advisory. The primary intent of the statute is to apprise the individual of the consequences of a refusal to submit to the test. Neset does not dispute that he was in fact informed of the consequences. Presented with these circumstances, we refuse to construe the statute to require that only the arresting officer may give the advisory.[3] *See Renck v. Motor Vehicle Division,* 636 P.2d 1294 (Colo. Ct.App.1981).

alleviate any confusion caused by our use of the term "probable cause" to describe the standard which we apply to investigatory vehicle stops. As we note in *VandeHoven, supra,* probable cause, as that term of art is used in our criminal law, is a "much more exacting standard." *VandeHoven, supra,* 388 N.W.2d at 858 n.1. The appropriate standard for analyzing the "stop" of a vehicle or person is whether the officer had an articulable and reasonable suspicion that the law has been violated. *State v. Placek, supra,* 386 N.W.2d at 37.

**3.** The Commissioner contends that Neset is not entitled to raise any issue regarding the implied consent advisory, citing Section 39–20–05(3), N.D.C.C. That subsection provides that "[w]hether the person was informed that the privilege to drive would be revoked or denied for refusal to submit to the test or tests is not an issue" in the license revocation hearing. Because we conclude that the procedures employed by the officers in this case sufficiently complied with Chapter 39–20, N.D.C.C., we need not address this issue.

We have reviewed the record and we conclude that the findings of fact are supported by a preponderance of the evidence; the conclusions of law are sustained by the findings of fact; and the agency decision is supported by the conclusions of law. We affirm the judgment of the district court sustaining the revocation of Neset's driving privileges.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.