2012 ND 136

**Carrie Ruth THORSRUD, Appellee,**

v.

**DIRECTOR, NORTH DAKOTA DE-PARTMENT OF TRANSPOR-TATION, Appellant.**

No. 20120136.

Supreme Court of North Dakota.

July 12, 2012.

Michael T. Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, N.D.; for appellant.

Steven D. Mottinger, Fargo, N.D.; for appellee.

MARING, Justice.

[¶ 1] The North Dakota Department of Transportation appeals from the district court's judgment reversing an administrative hearing officer's decision to suspend Thorsrud's driving privileges for two years

for driving under the influence of alcohol. A reasoning mind reasonably could have concluded that the hearing officer's finding that Thorsrud did not have anything to eat, drink, or smoke during the twenty minutes before the Intoxilyzer test is supported by the weight of the evidence on the entire record. Therefore, we reverse the district court's judgment and reinstate the administrative suspension of Thorsrud's driving privileges.

## I

[¶ 2] In February 2011, Carrie Thorsrud was arrested for driving under the influence of alcohol and transported to a law enforcement center. At 2:31 a.m., Officer Troy Nielsen, the arresting officer, determined Thorsrud's mouth was clear and, at 2:52 a.m., administered an Intoxilyzer test. On the Intoxilyzer Test Record and Checklist, Officer Nielsen certified the approved method of collection was followed and the twenty-minute waiting period was ascertained before administering the test. Officer Nielsen further noted on the record and checklist that Thorsrud's "mouth [was] cleared by Nielsen @ 0231 + B4 test." The Intoxilyzer test revealed Thorsrud's alcohol concentration was .182. Officer Nielsen issued a report and notice to Thorsrud indicating the intent to suspend her driving privileges.

[¶ 3] Thorsrud requested and received an administrative hearing. At the hearing, the Intoxilyzer Test Record and Checklist was offered and received into evidence without Thorsrud's objection. Officer Nielsen testified that he followed the approved method in administering the Intoxilyzer test to Thorsrud. Thorsrud testified that, after arriving at the law enforcement center, her handcuffs were removed, she took off her jewelry, and she emptied her pockets. She also testified Officer Nielsen allowed her to use the restroom unsupervised during the twenty-minute waiting period. On cross-examination, Thorsrud further testified that, while using the restroom, she did not place anything into or rinse her mouth. The hearing officer recalled Officer Nielsen to the stand. Officer Nielsen confirmed that Thorsrud's testimony about using the restroom unsupervised was accurate. Officer Nielsen did not provide any additional testimony as to measures he may have taken to ascertain the twenty-minute waiting period while allowing Thorsrud to use the restroom unsupervised. Thorsrud argued Officer Nielsen failed to comply with the approved method's requirement to ascertain the twenty-minute waiting period because he had allowed her to use the restroom unsupervised.

[¶ 4] At the conclusion of the hearing, the hearing officer issued his findings of fact, conclusions of law, and decision to suspend Thorsrud's driving privileges for two years. In reaching his decision, the hearing officer found "Nielsen ascertained the twenty minute wait," "[w]hile using the restroom, Thorsrud did not place anything into her mouth," and "[t]he intoxilyzer test was given in accordance with the state toxicologist's approved method."

[¶ 5] Thorsrud appealed to the district court. The district court reversed the hearing officer's decision, concluding Officer Nielsen did not properly ascertain the twenty-minute waiting period before administering the test, the approved method was not followed, and the test result is not admissible evidence because the hearing officer erred in finding the twenty-minute waiting period had been properly ascertained. The Department of Transportation appeals.

[¶ 6] On appeal, the Department argues the district court erred in reversing the hearing officer's suspension of Thors-

rud's driving privileges because the hearing officer's finding that the twenty-minute waiting period was ascertained is not against the greater weight of the evidence.

## II

[¶ 7] The review of a decision to suspend a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Leno v. N.D. Dep't of Transp.*, 2008 ND 10, ¶ 6, 743 N.W.2d 794. When reviewing an administrative agency's decision, we determine "only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Buchholtz v. N.D. Dep't of Transp.*, 2008 ND 53, ¶ 9, 746 N.W.2d 181. The district court, under N.D.C.C. § 28–32–46, and this Court, under N.D.C.C. § 28–32–49, must affirm an agency's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

Questions of law are fully reviewable on appeal from an administrative decision. *Sample v. N.D. Dep't of Transp.*, 2009 ND 198, ¶ 5, 775 N.W.2d 707.

[¶ 8] Section 39–20–07(5) and (6), N.D.C.C., govern the admissibility of Intoxilyzer test results into evidence:

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee....

6. ... Upon approval of the methods or devices, or both, required to perform the tests and the individuals qualified to administer them, the director of the state crime laboratory or the director's designee shall prepare, certify, and electronically post a written record of the approval with the state crime laboratory division of the attorney general at the attorney general website, and shall include in the record:

....

c. The operational checklist and forms prescribing the methods currently approved by the director of the state crime laboratory or the director's designee in using the devices during the administration of the tests.

The purpose of N.D.C.C. § 39–20–07 is " 'to ease the requirements for admissibili-

ty of chemical test results while ensuring that the test upon which the results are based is fairly administered. The legislature has struck a balance between procedural efficiency and substantive reliability.'" *State v. Schwalk,* 430 N.W.2d 317, 322 (N.D.1988) (quoting *Salter v. Hjelle,* 415 N.W.2d 801, 803 (N.D.1987)). "Fair administration of an Intoxilyzer test may be established by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed"; however, "'scrupulous' compliance does not mean 'hypertechnical' compliance." *Buchholz v. N.D. Dep't of Transp.,* 2002 ND 23, ¶ 7, 639 N.W.2d 490. To facilitate the statutory scheme, the State Toxicologist established approved methods for the devices used to administer Intoxilyzer tests. The approved method for the device relevant here, the Intoxilyzer 8000, directs that "[b]efore proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample...." *Approved Method to Conduct Breath Tests with the Intoxilyzer 8000,* dated July 15, 2009. Therefore, to comply with the approved method, Officer Nielsen was required to ascertain Thorsrud had nothing to eat, drink, or smoke within twenty minutes before administering the test.

### III

[¶ 9] The Department argues the hearing officer's finding that the twenty-minute waiting period was ascertained is not against the greater weight of the evidence. To support its argument, the Department contends Thorsrud failed to rebut the prima facie evidence establishing Officer Nielsen ascertained the twenty-minute waiting period. Further, even if Thorsrud rebutted the prima facie evidence, any defect in establishing fair ad-

ministration was cured by her own testimony.

[¶ 10] At the administrative hearing, the Department offered into evidence the Intoxilyzer Test Record and Checklist, which was admitted without Thorsrud's objection. In that record, Officer Nielsen indicated that he had ascertained the twenty-minute waiting period; noted he followed the approved method and instructions in conducting the test; and noted he had checked Thorsrud's mouth at 2:31 a.m. and before the test. Under N.D.C.C. § 39–20–05(4), once the Intoxilyzer Test Record and Checklist was admitted into evidence, the Department "establish[ed] prima facie [its] contents without further foundation" that Officer Nielsen had followed the approved method and ascertained the twenty-minute waiting period. The Intoxilyzer Test Record and Checklist is "presumed to be sufficiently complete to show fair administration until the defendant shows that 'the evidence as a whole clearly negates the presumed fact.'" *State v. Zimmerman,* 516 N.W.2d 638, 642 (N.D. 1994) (citing N.D.C.C. § 12.1–01–03(4)(a)). Therefore, a driver may rebut the Department's documentary foundation of fair administration by establishing either a deviation from approved procedures or a lack of fair administration despite compliance with approved procedures. *State v. Erickson,* 517 N.W.2d 646, 648 (N.D.1994) (citing *Zimmerman,* at 642). As such, once the record and checklist was received into evidence, Thorsrud had the burden to present sufficient evidence to rebut the prima facie evidence of fair administration by proving Officer Nielsen had not followed the approved method. *See Berger v. State Highway Commissioner,* 394 N.W.2d 678, 688 (N.D.1986) (explaining that if a defendant wants to discredit the prima facie fairness and accuracy of a test, it is the defendant's responsibility to produce evidence to show that the test was not fairly or adequately

administered). A defendant "must do more than raise the mere possibility of error." *Id.* To satisfy that burden, Thorsrud presented testimonial evidence, corroborated by cross-examination of Officer Nielsen, that established she was allowed to use the restroom without supervision during the twenty-minute waiting period:

> MR. MOTTINGER: Was Officer Nielsen with you the entire timeperiod [sic] you were at the jail?
>
> MS. THORSRUD: No.
>
> MR. MOTTINGER: Could you explain?
>
> MS. THORSRUD: Well, when we were . . . after I was placed under arrest, on the way to the jail I had mentioned that I needed to go to the bathroom. So he said when we got to the jail he would find somebody for me to take me to the bathroom. So when we got there, first we did do some paperwork. I took off my jewelry and took everything out of my pockets, that kind of thing. And then, he had me sit down, and he said he would go get a female jailer so that I could go to the bathroom. Then I was unhandcuffed, and I went to the bathroom by myself.
>
> MR. MOTTINGER: You went to the bathroom by yourself?
>
> MS. THORSRUD: Yes.

Through her testimony, Thorsrud met the burden of rebutting the Department's prima facie evidence. Thorsrud sufficiently established Officer Nielsen had deviated from the approved method of administering the test when he allowed her to use the restroom unsupervised clearly negating the presumed fact that he could ascertain she had nothing to eat, drink, or smoke within twenty minutes prior to the test. *See Zimmerman,* 516 N.W.2d at 642 (explaining defendant must show evidence negates a presumed fact).

[¶ 11] Although Thorsrud's evidence is sufficient to rebut the prima facie presumption of fair administration, we decline Thorsrud's invitation to conclude that the testing officer's deviation from the approved method, alone, means the test was not fairly administered. The twenty-minute waiting period can be ascertained by other means. *See generally Buchholz,* 2002 ND 23, ¶ 10, 639 N.W.2d 490 (holding that observing the individual is not the only manner for an officer to ascertain that the individual had nothing to eat, drink, or smoke within twenty minutes before the collection of the breath sample); *Johnson v. N.D. Dep't of Transp.,* 2004 ND 59, ¶ 18, 676 N.W.2d 807 (holding that despite a lack of testimony that the officer had constantly observed the defendant, it was not unreasonable for the fact-finder to infer that a person who was handcuffed behind his back and remained in police custody would have had nothing to eat, drink, or smoke during that time); *State v. Stroh,* 2011 ND 139, ¶ 15, 800 N.W.2d 276 (holding the court reasonably inferred the officer ascertained the twenty-minute waiting period where the court was left with no evidence of what happened to the can of chewing tobacco and the defendant did not testify).

[¶ 12] "Once the defendant has successfully rebutted the prosecution's prima facie showing, the prosecution may present testimony to show fair administration despite defendant's rebuttal." *Erickson,* 517 N.W.2d at 648–49; *see also Brandt v. N.D. State Highway Commissioner,* 409 N.W.2d 645, 647 (N.D.1987). In the present case, Officer Nielsen did not testify as to how he had ascertained the twenty-minute waiting period while allowing Thorsrud to use the restroom unsupervised. In *Salter,* 415 N.W.2d at 806 (emphasis added), we explained our concern when compliance with the approved method cannot be verified:

The State Toxicologist has not informed us whether any step in the approved method is dispensable in reaching a scientifically accurate result or in establishing fair administration. Therefore, we are unable to conclude that fair administration is established without a showing that the testing officer performed every step in the approved method, *or proof that the missing steps do not significantly affect the test results.*

Therefore, our analysis becomes whether other evidence presented in this case proved the test was performed according to the approved method. *See Salter,* at 803 (stating when "there is no checklist showing the test was performed according to the approved method and no testimony to that effect[,] [t]he question thus becomes whether there is other evidence to establish fair administration").

[¶ 13] Here, proof of fair administration of the Intoxilyzer test was established by Thorsrud's own testimony indicating she did not have anything to eat, drink, or smoke while she was unsupervised in the restroom. After testifying on direct examination that she used the restroom unsupervised, she further testified, on cross-examination, she had not rinsed or placed anything in her mouth while unsupervised in the restroom:

> MR. ALLEN: Were you ... while you were in the bathroom, besides going to the bathroom, what did you do?
>
> MS. THORSRUD: Washed my hands.
>
> MR. ALLEN: Did you put anything into your mouth?
>
> MS. THORSRUD: No.
>
> MR. ALLEN: Did you rinse your mouth out, or anything like that?
>
> MS. THORSRUD: No.

The hearing officer relied on the evidence submitted through Thorsrud's own testimony in reaching his conclusion, as follows:

> Thorsrud testified she went to the restroom by herself and not witnessed by Nielsen, however, she placed nothing in her mouth. She also did not testify to placing anything into her mouth when she was outside the restroom.
>
> Based upon the evidence it has been established that Thorsrud did not have anything to eat, drink, or smoke during the twenty minute waiting period.

Any defect in the fair administration of the test was cured through the testimony of Thorsrud. The record evidence supports Officer Nielsen observed Thorsrud before and after allowing her to use the restroom unsupervised, the officer cleared her mouth at 2:31 a.m. and before the test; Thorsrud entered the restroom without anything in her pockets, and she testified she did not have anything to eat, drink, or smoke during the time she was in the restroom. It was reasonable for the hearing officer to conclude the twenty-minute waiting period had been ascertained. *See Johnson,* 2004 ND 59, ¶ 18, 676 N.W.2d 807.

## IV

[¶ 14] We conclude a reasoning mind reasonably could have concluded that the hearing officer's finding is supported by the weight of the evidence on the entire record and, therefore, we reverse the district court's judgment and reinstate the administrative hearing officer's decision to suspend Thorsrud's driving privileges.

[¶ 15] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.