2013 ND 131

**Glen Lee YELLOWBIRD, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

No. 20130082.

Supreme Court of North Dakota.

July 18, 2013.

Chad R. McCabe, Bismarck, ND, for petitioner and appellant.

Douglas B. Anderson, Office of Attorney General, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1]  Glen YellowBird appeals from a district court judgment affirming the North Dakota Department of Transportation's revocation of his driving privileges for one year.  Because we conclude the plain language of N.D.C.C. § 39–20–14 does not require the officer requesting the on-site screening test to be certified to administer the test, we affirm the district court judgment affirming the Department's revocation of YellowBird's driving privileges.

I

[¶ 2]  In August 2012, YellowBird was arrested after being stopped for a traffic violation.  During the stop, YellowBird refused the on-site breath test.  He later refused to take the Intoxilyzer test.  YellowBird was issued a Report and Notice that his driving privileges may be revoked, and he requested a hearing.

[¶ 3]  At the hearing, Officer Jessica Helgeson, a "recruit officer" with authority to stop and arrest, testified she was on patrol with her field training officer, Officer Noah Lindelow.  After responding to a call of disorderly individuals in a hotel bar, the officers were told the individuals left in a silver vehicle. The officers found the vehicle and pulled it over after the driver crossed the centerline.  Officer Helgeson testified that she spoke with the driver, YellowBird, and he admitted that he had been drinking.  A third officer, Officer Lance Allerdings, later arrived on the scene.

[¶ 4]  Officer Helgeson asked Yellow-Bird to perform some standardized field sobriety tests, which YellowBird agreed to. Officer Helgeson conducted the horizontal gaze nystagmus (HGN) test, which the officer concluded YellowBird failed.  She then sought to conduct the walk-and-turn test, but after YellowBird stated he recently had knee surgery, Officer Helgeson did not conduct any more standardized field sobriety tests.  Officer Helgeson read Yellow-Bird the implied consent advisory and asked him to submit to the on-site breath test, the S–D5. Officer Helgeson testified that YellowBird refused the test, and he

was arrested for driving under the influence. Officer Helgeson also testified that either Officer Lindelow or Allerdings would have administered the S–D5 test because she is not certified to administer the test.

[¶ 5] After the arrest, the officers took YellowBird to the law enforcement center. Officer Helgeson testified that she read YellowBird the implied consent advisory in an attempt to utilize the Intoxilyzer test, and YellowBird sought to contact his attorney. According to Officer Helgeson, YellowBird ultimately refused the Intoxilyzer test.

[¶ 6] The hearing officer concluded Officer Helgeson did not correctly administer the HGN test; accordingly, the results were not considered, and the proposed revocation for refusing the Intoxilyzer test was dismissed. The hearing officer further concluded YellowBird refused the S–D5 test, and his driving privileges were revoked.

[¶ 7] YellowBird appealed to the district court. YellowBird argued that because Officer Helgeson was not certified as a chemical test operator, her request for YellowBird to submit to the SD–5 test was unauthorized under N.D.C.C. § 39–20–14, meaning his rejection "could not constitute a refusal for purposes of automatic license revocation." The district court affirmed, holding that the plain language of the statute illustrated "there is absolutely no provision in the statute that the law enforcement officer requesting submission to the onsite chemical screening test be a certified chemical test operator. The statute only requires '[t]he screening test or tests [ ] be performed by an enforcement officer certified as a chemical test operator . . . .' " YellowBird appealed.

## II

[¶ 8] "When reviewing an administrative agency's decision, we determine 'only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.' " *Thorsrud v. Director, N.D. Dep't of Transp.*, 2012 ND 136, ¶ 7, 819 N.W.2d 483 (quoting *Buchholtz v. Director, N.D. Dep't of Transp.*, 2008 ND 53, ¶ 9, 746 N.W.2d 181). In reviewing an agency decision, "[w]e will not . . . make independent findings or substitute our judgment." *Mees v. N.D. Dep't of Transp.*, 2013 ND 36, ¶ 9, 827 N.W.2d 345. The district court, under N.D.C.C. § 28–32–46, and this Court, under N.D.C.C. § 28–32–49, must affirm an agency's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

"Questions of law are fully reviewable on appeal." *Buchholtz,* at ¶ 9 (citation omitted).

### III

■ [¶ 9] On appeal, YellowBird argues N.D.C.C. § 39–20–14 is "very clear" and requires the officer requesting the onsite screening test to be certified to give the test. Because Officer Helgeson is not certified, YellowBird argues, she lacked the authority to request the test, making YellowBird's refusal irrelevant.

■ [¶ 10] Our disposition of this case turns on the interpretation of N.D.C.C. § 39–20–14, entitled "[s]creening tests."[1] "The sole purpose of an onsite screening test is to assist a law enforcement officer in deciding whether there are reasonable grounds to arrest an individual." *Brewer v. Ziegler,* 2007 ND 207, ¶ 25, 743 N.W.2d 391 (citation omitted). An individual may refuse an officer's request for an on-site screening test, but a "refusal of the individual to submit to a screening test will result in a revocation for up to four years of that individual's driving privileges." N.D.C.C. § 39–20–14.

[¶ 11] When the text of N.D.C.C. § 39–20–14 is parsed and statutory language unnecessary for this case is omitted, two relevant clauses appear:

> ■ [Drivers give implied consent to on-site screening tests] . . . upon the request of *a law enforcement officer* who has reason to believe that the individual committed a moving traffic violation . . . and in conjunction with the violation . . . *the officer* has, through *the officer's* observations, formulated an opinion that the individual's body contains alcohol. . . .

> ■ The screening test or tests must be performed by *an enforcement officer* certified as a chemical test operator. . . .

N.D.C.C. § 39–20–14 (emphases added).

■ [¶ 12] The plain language of the statute forecloses YellowBird's argument. "An" is an indefinite article, which is "equivalent to 'one' or 'any' "; but is "seldom used to denote plurality." *Black's Law Dictionary* 84 (6th ed.1990). In contrast, "the" is "[a]n article which particularizes the subject spoken of. In construing [a] statute, definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to indefinite or generalizing force [of] 'a' or 'an.' " *Id.* at 1477 (citing *Brooks v. Zabka,* 168 Colo. 265, 450 P.2d 653, 655 (1969) (en banc)); *see also BP America Production Co. v. Madsen,* 53 P.3d 1088, 1091–92 (Wyo.2002) (citing cases) ("Other courts agree that, in construing statutes, the definite article 'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' ").

[¶ 13] Applying this analysis shows there is no requirement in N.D.C.C. § 39–20–14 that the officer requesting the test must be certified to administer the test. Rather, it states that "an enforcement officer certified as a chemical test operator" must perform the test. The statute's use of the indefinite article "an," in this context, does not particularize or set forth the requirement that this certified officer be "the" preceding officer who requested the test. The legislature's use of "an," as opposed to again using the definite article "the," illustrates the legislature did not intend YellowBird's interpretation, which would require the officer requesting the screening test to be certified to administer the test. *See State v. Dennis,* 2007 ND 87,

---

1. The 2013 Legislative Assembly recently amended Chapter 39–20 by passing House Bill 1302. We consider the previous version of the statute, however, because this case predates the amendments.

¶ 12, 733 N.W.2d 241 ("The Legislature must be presumed to have meant what it has plainly expressed."). Our interpretation is in accord with this Court's previous caselaw noting: "The Legislature has impliedly recognized that not all law enforcement officers in this state will be certified to administer the chemical tests authorized under Chapter 39–20, N.D.C.C." *Neset v. N.D. State Highway Comm'r*, 388 N.W.2d 860, 863 (N.D.1986).

[¶ 14] YellowBird's argument is similar to an argument this Court rejected in *Neset.* In *Neset*, we interpreted a similar statute, N.D.C.C. § 39–20–01, which specified that drivers give implied consent to a chemical test of the blood, breath, saliva, or urine upon being arrested and informed that they are being charged with driving or being in actual physical control of a vehicle while under the influence of liquor or drugs. *Neset*, 388 N.W.2d at 863. The statute specified that "[t]he test or tests must be administered at the direction of *a law enforcement officer*" only after the person is arrested, and that "*[t]he arresting officer* shall also inform the person charged that refusal" to submit to the test would result in revocation of driving privileges. *Id.* (quoting N.D.C.C. § 39–20–01 (1985) (emphases added)). Neset was stopped for moving violations and subsequently failed various field sobriety tests. *Id.* at 861–62. Neset was arrested for driving under the influence and transported to a law enforcement center for the Intoxilyzer test. *Id.* at 862. Because the arresting officer was not qualified to administer the Intoxilyzer test, he requested that another officer administer the test. *Id.* The officer qualified to administer the Intoxilyzer test read Neset the required implied consent advisory and requested that Neset submit to the test. Neset refused. *Id.* Neset's driving privileges were revoked, and the district court affirmed the revocation. *Id.*

[¶ 15] On appeal, Neset argued that "only the arresting officer can make the request and give the implied consent advisory." *Neset*, 388 N.W.2d at 863. We disagreed, noting that "[t]here is no provision in the statute that the arresting officer is the only law enforcement official who can request that the arrested person submit to the test. The statute requires only that the test 'be administered at the direction of a law enforcement officer only after placing the person … under arrest.'" *Id.* (quoting N.D.C.C. § 39–20–01 (1985)). In rejecting Neset's claim that the implied consent advisory can only be given by the arresting officer, we refused to "construe the statute so literally." *Neset*, at 863. We noted: "The Legislature has impliedly recognized that not all law enforcement officers in this state will be certified to administer the chemical tests authorized under Chapter 39–20, N.D.C.C." *Id.*

[¶ 16] Similarly, in N.D.C.C. § 39–20–14, there is no provision in the statute that the officer requesting the on-site screening test must be certified to administer the test. The statute only requires that the officer administering the test must be certified. YellowBird's interpretation, like Neset's, effectively rewrites the statute, and we decline to adopt YellowBird's interpretation.

IV

[¶ 17] YellowBird's other arguments are either unnecessary to our decision or without merit.

V

[¶ 18] Because the plain language of the statute forecloses YellowBird's proposed statutory interpretation, we affirm the district court judgment affirming the

Department's revocation of YellowBird's driving privileges.

[¶19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.