2015 ND 9

**Jesse Raye KELLER, Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 20140238.

Supreme Court of North Dakota.

Jan. 15, 2015.

Danny L. Herbel, The Regency Business Center, Bismarck, ND, for appellant.

Michael T. Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for appellee.

McEVERS, Justice.

[¶1] Jesse Keller appeals a district court judgment affirming a Department of Transportation hearing officer's decision suspending his driving privileges for 180 days for driving under the influence. We affirm concluding the Department did not lose authority to suspend Keller's privileges, when the police officer did not forward the results of the drug analytical report of Keller's blood sample to the Department.

I

[¶2] On December 6, 2013, a Beulah police officer observed Jesse Keller driving

with an obstructed license plate. Keller turned his vehicle into a parking lot and stopped. The officer parked next to Keller's vehicle and, when Keller exited the vehicle, the officer made contact with him. The officer smelled an odor of alcohol coming from Keller and noticed Keller's speech was slurred. Keller agreed to take field sobriety tests and failed the horizontal gaze nystagmus test. Keller refused further field sobriety testing. Although Keller agreed to take an onsite screening test, he failed to provide an adequate breath sample. The officer arrested Keller for driving under the influence and transported him to the hospital. At the hospital, the officer read Keller the implied consent advisory, and Keller agreed to provide a blood sample. After a blood sample was collected, the officer submitted the blood sample to the state crime laboratory, requesting it be tested for both alcohol and drugs. The alcohol analytical report of Keller's blood sample indicated a 0.210 alcohol concentration. The officer sent the alcohol analytical report to the director of the Department of Transportation, along with other required documents. However, the officer testified he could not remember whether he had received the drug analytical report of the blood sample at the time he submitted the other documents to the director. The officer was not aware if anyone else had forwarded the drug analytical report to the director.

[¶ 3] Keller requested a hearing, and a hearing was held. At the hearing, Keller requested the opportunity to submit the results of the drug analytical report of his blood sample to the hearing officer after the hearing, as an exhibit, and did so. The results showed the presence of hydrocodone in Keller's blood sample. After the hearing, the hearing officer suspended Keller's driving privileges for 180 days, concluding the officer had reasonable grounds to believe Keller had been driving a vehicle while under the influence of intoxicating liquor, Keller was tested in accordance with the law, and Keller's alcohol concentration was over the legal limit. Keller appealed. The district court affirmed the hearing officer's decision. Keller appealed to this Court.

II

[¶ 4] "This Court reviews the Department's decision to suspend a person's driving privileges under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 6, 848 N.W.2d 659 (citing *Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶ 6, 832 N.W.2d 319). "We review the agency's decision on appeal from the district court. However, the district court's analysis is entitled to respect if it is sound." *Herrman v. N.D. Dep't of Transp.*, 2014 ND 129, ¶ 6, 847 N.W.2d 768 (citation omitted) (quotation marks omitted). An agency's decision is accorded great deference, when reviewed on appeal. *McCoy*, 2014 ND 119, ¶ 6, 848 N.W.2d 659. Under N.D.C.C. § 28–32–46, we must affirm an administrative agency's decision unless one of the following conditions applies:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

■■■ [¶ 5] "We do not make independent findings of fact or substitute our judgment for that of the agency." *Fossum v. N.D. Dep't of Transp.*, 2014 ND 47, ¶ 9, 843 N.W.2d 282. Rather, "we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Yellowbird v. N.D. Dep't of Transp.*, 2013 ND 131, ¶ 8, 833 N.W.2d 536 (citation omitted) (quotation marks omitted). Once the facts are established, their significance presents a question of law, which we review de novo. *Bell v. N.D. Dep't of Transp.*, 2012 ND 102, ¶ 20, 816 N.W.2d 786.

### III

■■ [¶ 6] Keller argues the Department did not have authority to suspend his driving privileges because the officer did not forward the drug analytical report of his blood sample to the director of the Department, which he contends is a basic and mandatory provision of N.D.C.C. ch. 39–20.

[¶ 7] "The Department's authority to revoke or suspend a person's driving privileges is given by statute, and the Department must meet the basic and mandatory provisions of the statute to have authority to revoke or suspend a person's driving privileges." *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 8, 851 N.W.2d 172. While the authority of an administrative agency is dependent upon the terms of a statute, terms must be construed logically so as not to produce an absurd result. *Schwind v. Dir., N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D.1990). Rules of statutory construction require words and phrases of a statute be construed according to context. N.D.C.C. § 1–02–03.

[¶ 8] Keller's argument focuses on whether N.D.C.C. § 39–20–03.1(4) requires a law enforcement officer to forward a drug analytical report of a blood sample to the director, in addition to the alcohol analytical report for the same blood sample. We have not previously addressed whether N.D.C.C. § 39–20–03.1(4) requires law enforcement to forward a drug analytical report of a blood sample to the director.

[¶ 9] Section 39–20–03.1(4), N.D.C.C., requires the law enforcement officer to "forward to the director a certified copy of the operational checklist and test records of a breath test and *a copy of the certified copy of the analytical report for a blood or urine test* for all tests administered at the direction of the officer." (Emphasis added.) In interpreting N.D.C.C. § 39–20–03.1(4), we have previously concluded law enforcement is required to forward the results of all breath tests administered and an analytical report for any blood or urine samples collected. *See Bosch v. Moore*, 517 N.W.2d 412, 413 (N.D.1994); *Wingerter v. N.D. Dep't of Transp.*, 530 N.W.2d 362, 365 (N.D.1995). *Bosch* and *Wingerter* dealt only with tests administered to determine the driver's alcohol concentration. Although N.D.C.C. § 39–20–03.1(4) does not specify whether law enforcement must forward both the alcohol and drug analytical reports of a blood test, the introductory paragraph of N.D.C.C. § 39–20–03.1

discusses only those tests determining a person's alcohol concentration:

> If a person submits to a test ... and the test shows that person to have an *alcohol concentration* of at least eight one-hundredths of one percent by weight ... at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle, the following procedures apply: ...

(Emphasis added.) The scope of what an administrative hearing officer may consider regarding license suspension for a person at least twenty-one years of age, is limited to whether: 1) the officer had reasonable grounds to believe the individual was driving a vehicle in violation of section 39–08–01; 2) the driver was arrested; 3) the driver was tested in accordance to sections 39–20–01, 39–20–03, and 39–20–02; and 4) the test results indicate the driver's *alcohol* concentration was at least eight one-hundredths of one percent by weight. N.D.C.C. § 39–20–05(2). In addition, N.D.C.C. § 39–20–04.1 only allows for an administrative sanction by the director based on test results for alcohol concentration, with no reference made to a drug test.

[¶ 10] In arguing N.D.C.C. § 39–20–03.1(4) requires law enforcement to forward the results of the drug analytical report of his blood sample, Keller relies on *Bosch*. In *Bosch*, a law enforcement officer conducted a breath test and collected a urine sample from a driver to determine his alcohol concentration, but discarded the breath test results because he believed the breath test results were invalidated by a deviation between the two breath samples. 517 N.W.2d at 412. We concluded a law enforcement officer is required to forward all breath test results and does not have discretion to determine whether the results of a breath test are invalidated.

*Id.* at 413. Further, we held because this statutory provision requiring law enforcement to forward the test records of all breath tests is basic and mandatory, the Department was deprived of the authority to suspend the individual's driving privileges. *Id.*

[¶ 11] However, this case is distinguishable from *Bosch* because the officer collected a single blood sample from Keller and submitted it to the state crime laboratory. Although the officer requested the blood sample be tested for both alcohol concentration and drugs, only a single sample was collected from Keller. Further, the officer did not exercise discretion in determining which sample or test results to forward to the director. The officer testified he was not even aware whether he received the results of the drug analytical report for Keller's blood sample. Instead, this case is more similar to *Wingerter*, a case in which an analyst from the State Toxicologist's Office tested the alcohol concentration of a driver's blood sample two separate times, in accordance with protocol, because of an error that occurred during the first analysis. 530 N.W.2d at 364. The law enforcement officer did not forward the result of the first analysis of the blood sample. *Id.* However, this Court concluded the Department was not deprived of authority to suspend Wingerter's driving privileges because the requirements for forwarding the results of a breath test are different from the requirements for submitting the analytical report of a blood or urine test. *Id.* at 365. Specifically, we stated:

> In *Bosch*, we read the plain language of the statute test records to mean that all test records for all breath tests administered by the officer must be forwarded to the Department, leaving the officer who conducted the tests with no discre-

tion to choose which test records to send.

However, the statute does not require transmission of all test records of urine, saliva, or blood tests; it only requires transmission of a certified copy of the analytical report for each test administered. The statutory distinction between breath tests and blood tests reflects, we think, the expert status of the State Toxicologist's certified analyst, and is consistent with the purpose of NDCC § 39–20–07 to ease the requirements for admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered. We do not accord the same expert status to a police officer conducting breath tests as we do to a certified toxicology analyst operating in a controlled laboratory environment....

*Id.* (citations omitted).

[¶ 12] Although no error occurred here, the state crime laboratory tested the same blood sample for two different purposes. Reading N.D.C.C. § 39–20–03.1 in context, there would be no need for the director to receive the results of the drug test, because the requirement to submit the analytical report is based on the driver's alcohol concentration. Only alcohol tests show alcohol concentration. Further, we interpret related statutory "provisions together, if possible, to harmonize and to give meaning to each provision." *Martin v. Stutsman Cnty. Soc. Servs.*, 2005 ND 117, ¶ 13, 698 N.W.2d 278. When reviewing other statutory provisions relating to administrative license suspension, it would make no sense to require the forwarding of drug tests to the director, when the director would have no authority to sanction the driver based on the results of the test under N.D.C.C. § 39–20–04.1.

[¶ 13] Accordingly, under the guidance of *Bosch* and *Wingerter,* we decline to interpret N.D.C.C. § 39–20–03.1(4) as requiring an officer to forward the results of a drug analytical report of a blood sample to the director, in addition to the alcohol analytical report for the same blood sample. Concluding otherwise would be contrary to the plain meaning of N.D.C.C. § 39–20–03.1, in its entirety, and would produce an absurd result. *See Samdahl v. Dir., N.D. Dep't of Transp.,* 518 N.W.2d 714, 717 (N.D.1994) (stating although an administrative agency's authority derives from the terms of a statute, the terms must be construed logically to avoid an absurd result). We therefore conclude forwarding the results of a drug analytical report to the director is not a basic mandatory provision, which must be established in order to confer authority on the Department to suspend an individual's driving privileges for driving under the influence of alcohol.

IV

[¶ 14] We affirm the district court's judgment affirming the hearing officer's decision suspending Keller's driving privileges for 180 days, concluding N.D.C.C. § 39–20–03.1(4) does not require an officer to forward the results of a drug analytical report to the director of the Department.

[¶ 15] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.