**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**OCTOBER 2, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 190

William Gene Kirkpatrick,       Petitioner and Appellant

  v.

North Dakota Department of Transportation,  Respondent and Appellee

## No. 20230085

Appeal from the District Court of Bowman County, Southwest Judicial District, the Honorable Dann E. Greenwood, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Chad R. McCabe, Bismarck, ND, for petitioner and appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, ND, for respondent and appellee.

**Crothers, Justice.**

[¶1]   William Kirkpatrick appeals from a district court judgment affirming the North Dakota Department of Transportation's suspension of his driving privileges for one year for driving under the influence. Kirkpatrick argues the Department lacked authority to suspend his driving privileges because the arresting officer failed to forward to the Department the results of an analytical blood test report performed at the request of the officer. We reverse the district court's judgment affirming the Department's decision suspending Kirkpatrick's driving privileges for one year.

I

[¶2]   On November 4, 2022, a Bowman police officer stopped Kirkpatrick for driving without illuminated taillights. After observing signs of impairment, the officer arrested Kirkpatrick and performed two chemical breath tests. The first test showed an alcohol concentration of 0.162, and the second test showed a concentration of 0.155. The officer completed a report and notice, issued Kirkpatrick a temporary operator's permit, and provided him with a copy of the test results.

[¶3]   After the breath tests, Kirkpatrick informed the officer that he had taken prescription medication while consuming alcohol. At the officer's request, Kirkpatrick consented to a blood test. The officer submitted the resulting blood sample to the state crime laboratory and requested analysis for both alcohol and drugs. On November 7, 2022, the officer submitted a certified report to the Department, showing the officer had reasonable grounds to believe Kirkpatrick was driving under the influence, showing Kirkpatrick was legally arrested, documenting that the officer performed two breath tests on Kirkpatrick, and providing the breath test results.

[¶4]   On November 8, 2022, Kirkpatrick requested an administrative hearing. The Department scheduled a hearing in December and, on November 15, 2022, provided Kirkpatrick with the hearing issues and documents the Department

intended to offer as evidence. On November 21, 2022, the officer received the analytical blood report showing an alcohol concentration of .132 grams per 100 milliliters. On November 23, 2022, the officer sent the analytical blood report to the State's attorney but did not forward it to the Department.

[¶5] At the administrative hearing Kirkpatrick argued the Department lacked jurisdiction to suspend his driving privileges because the officer failed to forward the analytical blood report to the Department. The hearing officer found the certified report provided the Department with authority to conduct suspension proceedings, and the officer's failure to provide the blood results to the Department did not deprive the Department of its authority to suspend Kirkpatrick's driving privileges.

[¶6] The Department suspended Kirkpatrick's driving privileges for one year. Kirkpatrick appealed to the district court, which affirmed the Department's decision. Kirkpatrick timely appeals.

II

[¶7] Kirkpatrick argues the officer's failure to forward the report from the analytical blood test performed at the request of the officer deprived the Department of its authority to suspend his driving privileges.

[¶8] The Administrative Agencies Practice Act governs the review of the Department's decision to suspend a driver's license. N.D.C.C. ch. 28-32. In an appeal from a district court's review of the Department's decision, this Court reviews the Department's decision. *See Christianson v. Henke*, 2020 ND 76, ¶ 6, 941 N.W.2d 529. We give deference to the Department's findings of fact and review legal conclusions de novo. *Id.* We must affirm the Department's decision unless:

> "1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of chapter 28-32 have not been complied with in the proceedings before the agency.

2

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28-32-46. The issue in this case relates to whether the hearing officer's decision was in accordance with the law.

[¶9] "A public administrative body has such adjudicatory jurisdiction as is conferred on it by statute. The jurisdiction of an administrative agency is dependent upon the terms of the statute and must meet at least the basic mandatory provisions of the statute before jurisdiction is established." *Schwind v. Director, N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D. 1990) (cleaned up). "This Court has previously discussed whether certain provisions of N.D.C.C. § 39-20-03.1 are basic and mandatory provisions that require compliance before the Department is authorized to suspend a person's driving privileges." *Wampler v. N.D. Dep't of Transp.*, 2014 ND 24, ¶ 7, 842 N.W.2d 877. "Whether the provision is basic and mandatory rests primarily on whether the Department's authority is affected by failure to apply the provision." *Morrow v. Ziegler*, 2013 ND 28, ¶ 9, 826 N.W.2d 912.

[¶10] The words "jurisdiction" and "authority" mean different things. Yet, some of our earlier cases seemingly used the terms interchangeably when discussing whether a statutory requirement was basic and mandatory. *See e.g.*, *Schwind*, 462 N.W.2d at 150 (we have stated "[t]he jurisdiction of an administrative agency is dependent upon the terms of the statute and must meet at least the basic mandatory provisions of the statute before jurisdiction is established") (cleaned up); *Wingerter v. N.D. Dep't of Transp.*, 530 N.W.2d 362, 365 (N.D. 1995) ("We hold that the Department had jurisdiction to suspend Wingerter's

license."); *Dworshak v. Moore*, 1998 ND 172, ¶ 9, 583 N.W.2d 799 ("The issue we face, therefore, is whether the failure of the officer to comply with N.D.C.C. § 39-20-04(1), deprives the Department of jurisdiction to revoke Dworshak's driving privileges."); *Koenig v. N.D. Dep't of Transp.*, 2005 ND 95, ¶ 15, 696 N.W.2d 534 (officer's failure to provide Department with operator's license "does not destroy the Director's jurisdiction to suspend a violator's driving privileges"); *but see, Schwind*, 462 N.W.2d at 151 ("the Director's jurisdiction was properly exercised"); *Bosch v. Moore*, 517 N.W.2d 412, 413 (N.D. 1994) (stating "officer's failure to submit the Intoxilyzer test records deprived DOT of authority to suspend Bosch's driving privileges"); *Larson v. Moore*, 1997 ND 227, ¶ 10, 571 N.W.2d 151 (officer's failure to comply with statute deprived Department of "authority to suspend"); *Keller v. N.D. Dep't of Transp.*, 2015 ND 9, ¶ 13, 858 N.W.2d 316 (forwarding results of drug analytical report to Director was not required "to confer authority on the Department to suspend an individual's driving privileges").

[¶11] We explained in *Environmental Law & Policy Center v. North Dakota Public Service Commission*, 2020 ND 192, ¶ 11, 948 N.W.2d 838, that the term "jurisdiction" has three components in the administrative law context:

> "(1) personal jurisdiction, referring to the agency's authority over the parties and intervenors involved in the proceedings; (2) subject matter jurisdiction, referring to the agency's power to hear and determine the causes of a general class of cases to which a particular case belongs; and (3) the agency's scope of authority under statute."

[¶12] Here, the Department has jurisdiction to suspend an operator's license because the legislature granted it that power in N.D.C.C. ch. 39-20. The issue in this case is whether the Department's jurisdiction has been invoked through filings meeting the basic and mandatory requirements of applicable law. Otherwise stated, once the Department's jurisdiction has been invoked, it is authorized to conduct proceedings to suspend an operator's license if law enforcement has provided it with the information essential to showing suspension may be warranted under the law. In this context, "authority" means

"the official right or permission to act." *Black's Law Dictionary*, 163 (11th ed. 2019).

[¶13] Chapter 39-20 gives the Department jurisdiction to suspend operator's licenses of individuals driving under the influence of alcohol, and N.D.C.C. § 39-20-04.1 provides the Department with authority to suspend a license. Section 39-20-03.1(4), N.D.C.C., provides the following procedure:

> "[t]he law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the director a certified written report in the form required by the director. If the individual was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the individual had been driving or was in actual physical control of a motor vehicle while in violation of section 39-08-01, or equivalent ordinance, that the individual was lawfully arrested, that the individual was tested for alcohol concentration under this chapter, and that the results of the test show that the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to an individual under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight. In addition to the operator's license and report, the law enforcement officer shall forward to the director a certified copy of the operational checklist and test records of a breath test *and a copy of the certified copy of the analytical report for a blood or urine test for all tests administered at the direction of the officer*."

(Emphasis added.)

[¶14] The parties do not dispute that the officer complied with N.D.C.C. § 39-20-03.1(4) by forwarding to the Department a report and notice and both breath test results, all within five days of the issuance of the temporary operator's permit. They also agree that, without more, by providing these items to the Department, the Department had authority under N.D.C.C. § 39-20-03.1(4) to suspend Kirkpatrick's driving privileges. However, the parties disagree whether the Department retained that authority when the officer failed to forward to the Department the subsequently received analytical blood

5

report. Thus, our task is to determine the effect on an otherwise proper administrative suspension proceeding when an additional blood-alcohol test result from a test performed at the direction of an officer exists but was not submitted to the Department. That is a question of law, which we review de novo. *See Christianson,* 2020 ND 76, ¶ 6.

[¶15] In *Bosch*, the driver was arrested for driving under the influence (DUI) and administered two Intoxilyzer breath tests and a urine test. 517 N.W.2d at 412. The officer discarded the Intoxilyzer test results because they were invalid due to a deviation from each other of more than 0.02%. *Id*. Only the analytical report from the urine test was submitted to the Department. *Id*. We held N.D.C.C. § 39-20-03.1(3)[1] required that the officer provide the Department with "all tests," which was basic and mandatory to the Department having authority to suspend Bosch's license. *Id*. at 413. The officer's failure to provide the Department with the invalid Intoxilyzer test results "deprived DOT of authority to suspend Bosch's driving privileges." *Id*.

[¶16] In *Wingerter*, the driver was arrested for DUI and consented to a blood test. 530 N.W.2d at 363. A certified copy of Wingerter's analytical report was forwarded to the Department; however, it was discovered at the administrative hearing that the analyst at the state toxicologist's office actually performed two tests of the blood but only filed a report from one of the tests. *Id*. at 363-64. The other report was not submitted to the Department because the test "'went out of range,' due to human error," and according to the approved method, needed to be repeated. *Id*. at 364. A Department hearing officer suspended Wingerter's license and a district court reversed because all tests were not submitted to the Department as required by *Bosch*. *Id*. This Court reversed, holding test result reports from an Intoxilyzer machine and an analyst at the state toxicologist's office stand on different footing. *Id*. at 365. In the latter case, the statute "requires the officer to forward 'a certified copy of the operational checklist and test records,' but for urine, saliva, and blood tests, it requires only 'a copy of

---

[1] Section 39-20-03.1(3) is the predecessor statue to N.D.C.C. § 39-20-03.1(4). 2009 N.D. Sess. Law ch. 340, § 1. The old and new subsections are substantively the same.

6

the certified copy of the analytical report,' filled out by the State Toxicologist." *Id*.

[¶17] In *Maher v. North Dakota Department of Transportation,* the driver was arrested for DUI and agreed to a blood test. 539 N.W.2d 300, 301 (N.D. 1995). The first blood draw attempt resulted in no blood being drawn into the collection tube, so the tube and collection kit were discarded. *Id*. A second blood draw attempt was successful and resulted in the state toxicologist submitting a certified copy of an analytical report. *Id*. A hearing officer suspended Maher's license and a district court reversed after concluding "the Department's failure to forward the first blood collection kit divested it of jurisdiction to suspend Maher's driver's license." *Id*. This Court reversed, holding:

> "The analytical reports for a blood test are the 'results' we spoke of in *Bosch*. The hearing officer found no blood had entered the first vacutainer tube. It is impossible to obtain the analytical report of a blood test from a vacutainer tube without any blood in it. Therefore, N.D.C.C. § 39-20-03.1 does not require an officer to forward an opened, empty blood collection kit to the Director of the Department of Transportation. As the hearing officer stated, requiring the officer to forward an opened, yet empty test kit would be a 'useless and idle gesture.'"

*Id*. at 302.

[¶18] In *Larson*, the driver was arrested for DUI and consented to a blood test. 1997 ND 227, ¶ 2. A first blood draw attempt produced only a small amount of blood. *Id*. ¶ 3. That sample was discarded and a second sample was drawn and submitted to the state toxicologist. *Id*. A hearing officer suspended Larson's license and a district court affirmed. *Id*. at ¶ 4. Larson argued on appeal that the Department did not have authority to suspend his operating privileges based on *Bosch* because the officer was required to submit to the Department "all tests administered at the direction of the officer." *Id*. at ¶ 8. The Department argued the disposition should be guided by the holdings in *Maher* and *Wingerter*. *Id*. at ¶ 9. This Court agreed with Larson by equating the first blood sample to "a test." *Id*. at ¶ 10. As a result, "[t]he officer's failure to submit the first sample for testing to obtain an analytical report as required by

7

N.D.C.C. § 39-20-03.1(3) deprived the Department of authority to suspend Larson's driver's license." *Id*.

[¶19] In *Koenig*, the driver was arrested for DUI and submitted to an Intoxilyzer breath test. 2005 ND 95, ¶ 2. Koenig put chewing tobacco in his mouth after providing the first of two breath samples. *Id*. at ¶ 3. A second sample was not taken due to the foreign substance in Koenig's mouth, and no results were recorded from the first breath test. *Id*. The officer also testified that the Intoxilyzer printer malfunctioned during the first breath test so no record of the test could have been produced even if a valid test had been generated. *Id*. After the 20-minute wait, a second set of two breath samples was completed, and the results were printed and submitted to the Department. *Id*. at ¶ 4. The hearing officer suspended Koenig's license and a district court reversed because all Intoxilyzer test results were not submitted to the Department. *Id*. at ¶ 5. This Court reversed, concluding *Bosch* and *Larson* were not controlling because the officer "did not discard any test results or otherwise make a judgment on the validity of any tests administered to Koenig. Every available record of test results was forwarded to the Department." *Id*. at ¶ 14.

[¶20] In *Keller*, the driver was arrested for DUI and agreed to a blood draw. 2015 ND 9, ¶ 2. A blood sample was obtained and tested by the state crime laboratory for alcohol and certain drugs. The lab provided the arresting officer with an alcohol analytical report, and the officer provided that report and other documents to the Department. *Id*. The arresting officer did not provide the Department with a copy of Keller's drug analytical report, which showed the presence of hydrocodone. *Id*. at ¶¶ 2-3. The hearing officer suspended Keller's license, and a district court affirmed. *Id*. at ¶ 3. On appeal, Keller claimed forwarding the drug analytical report to the Department was basic and mandatory and without that action the Department did not have authority to suspend his license. *Id*. at ¶ 6. This Court affirmed, concluding the lab tested one blood sample for alcohol and drugs, the Department only has authority to suspend a driver's license for alcohol intoxication, and "[o]nly alcohol tests show alcohol concentration." *Id*. at ¶ 12. Therefore, "it would make no sense to require the forwarding of drug tests to the director, when the director would

8

have no authority to sanction the driver based on the result of the test under N.D.C.C. § 39-20-04.1." *Id.*

[¶21] Here, the officer submitted the blood sample taken at his request to the state crime laboratory to test for alcohol and drugs. Under the holdings in *Keller* and *Wingerter*, the officer's failure to provide the Department with Kirkpatrick's analytical drug test report does not affect the Department's authority to suspend a driver's license due to alcohol intoxication. *Wingerter*, 530 N.W.2d at 365; *Keller*, 2015 ND 9, ¶ 13. Conversely, under the holdings in *Bosch* and *Maher*, the records from all alcohol tests are basic and mandatory. *Bosch*, 517 N.W.2d at 413; *Maher*, 539 N.W.2d at 302. The officer is required to provide the Department with all "test records of a breath test and a copy of the certified copy of the analytical report for a blood or urine test for all tests administered at the direction of the officer." N.D.C.C. § 39-20-03.1(4). The officer's failure to provide the records of all alcohol-related tests administered at his direction "deprived DOT of authority to suspend Bosch's driving privileges." *Bosch*, at 413. In *Maher* we clarified that "[t]he analytical reports for a blood test are the 'results' we spoke of in *Bosch*." *Maher* at 302. Therefore, under *Bosch* and *Maher*, Kirkpatrick's alcohol-related breath and blood test results needed to be provided to the Department, and without them the Department did not have authority to suspend Kirkpatrick's driver's license.

## III

[¶22] We reverse the district court's judgment affirming the Department's decision to suspend Kirkpatrick's driving privileges for one year.

[¶23] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr